Robert W. Evans, Jr., Petitioner-Appellant,

v.

Wisconsin Department of Justice,
Respondent-Respondent.

Court of Appeals

*No. 2013AP816. Submitted on briefs December 9, 2013.
—Decided February 27, 2014.*

2014 WI App 31

(Also reported in 844 N.W.2d 403.)

 

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Mark P. Maciolek* of *Murphy Desmond, S.C.*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Bruce A. Olsen*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Lundsten, Sherman and Kloppenburg, JJ.

¶ 1. LUNDSTEN, J. Robert W. Evans, Jr., appeals the circuit court's order upholding the Wisconsin Department of Justice's decision to deny Evans' application for a license to carry a concealed weapon. The denial was based on the Department's conclusion that Evans' 2002 conviction for disorderly conduct was a "misdemeanor crime of domestic violence" under 18 U.S.C. § 921(a)(33)(A). We agree with the Department's conclusion and, therefore, affirm. There is no dispute that, if Evans' conviction qualifies, the Department properly denied his application for a permit.

¶ 2. As pertinent here, 18 U.S.C. § 921(a)(33)(A) requires that the qualifying crime have, "as an element," the use of physical force. It also requires that the crime be committed by a person who has at least one of several specified relationships with the victim. The specified relationships include "similarly situated to a . . .parent . . .of the victim." 18 U.S.C. § 921(a)(33)(A)(ii). We conclude that Evans' conviction meets the first requirement because he was convicted of a disorderly conduct that had, as an element, "violent, abusive, and otherwise disorderly" conduct. We further

conclude that Evans' conviction meets the second requirement because he was "similarly situated to a . . . parent" of the victim.

## Background

¶ 3. The necessary background facts are few and undisputed and, for the most part, are stated above. We reference additional facts as needed in the discussion below.

## Discussion

¶ 4. Under 18 U.S.C. § 922(g)(9), it is "unlawful for any person . . . who has been convicted . . . of a misdemeanor crime of domestic violence . . . [to] possess in or affecting commerce, any firearm or ammunition." *See United States v. Hayes*, 555 U.S. 415, 420, 426 (2009). Federal law defines a "misdemeanor crime of domestic violence" for this purpose as an offense that:

> (i) is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A); *see also Hayes*, 555 U.S. at 420–21. Our focus here is on part (ii) of this definition.

¶ 5. The Supreme Court in *Hayes* interpreted part (ii) as having two requirements. Specifically, the offense at issue must:

292

(1) "[have], as an element, the use [of force]," and (2) [be] committed by a person who has a specified domestic relationship with the victim.

*Hayes*, 555 U.S. at 426 (second alteration in *Hayes*).

¶ 6. Evans argues that neither requirement is met here. We address each requirement below, and conclude that both requirements are met.

¶ 7. As a preliminary matter, the parties dispute our standard of review. Evans argues that we should apply de novo review to the Department's denial of his permit. The Department argues that we should apply due weight deference. We need not resolve this dispute because the standard of review does not affect the outcome. That is, even if we were to apply a de novo standard of review, we would agree with the Department's conclusion that Evans' disorderly conduct conviction qualifies as a "misdemeanor crime of domestic violence."

### 1. First Requirement: Has, "As An Element," The Use Of Physical Force

¶ 8. We turn to the first requirement, whether Evans' disorderly conduct conviction has, "as an element," the use of physical force. On this topic, we agree with the circuit court and the Department that Evans' conviction for disorderly conduct has the use of physical force as an element. We first provide a general summary of our reasoning, and then explain our reasoning in further detail in the course of rejecting Evans' more specific arguments.

¶ 9. The disorderly conduct statute provides that

[w]hoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unrea-

sonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor.

WIS. STAT. § 947.01(1).[1]

■

¶ 10. Generally speaking, disorderly conduct has two elements: (1) engaging in conduct of a type or types enumerated, and (2) doing so under circumstances in which that conduct tends to cause or provoke a disturbance. Although there may be different ways to state the first element,[2] what is clear is that the first element need not consist of all seven types of listed conduct ("violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly"). Rather, the first element allows for alternatives.

¶ 11. For example, a person could be charged with engaging in violent conduct under circumstances that tend to cause or provoke a disturbance and be convicted of disorderly conduct based solely on that charge. In this example, the first element is that the person engaged in violent conduct. To take further examples, the first element could be "indecent and profane" conduct, or it could be "indecent *or* profane" conduct. In

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

[2] *See State v. Schwebke*, 2002 WI 55, ¶ 24, 253 Wis. 2d 1, 644 N.W.2d 666 (" 'First, [the State] must prove that the defendant engaged in violent, abusive, indecent, profane, boisterous, unreasonably loud, or similar disorderly conduct.' " (quoted source omitted)); *City of Oak Creek v. King*, 148 Wis. 2d 532, 540, 436 N.W.2d 285 (1989) ("First, the conduct must be of the type enumerated in the statute or similar thereto in having a tendency to disrupt good order.").

sum, alternative types of first-element conduct may be charged singly, in the conjunctive, or in the disjunctive.

¶ 12. Here, Evans was convicted of disorderly conduct based on a first element specified as "violent, abusive and otherwise disorderly conduct."[3] Because "violent" conduct necessarily implies the use of physical force, we conclude that Evans' conviction for disorderly conduct has the use of physical force as an element.

¶ 13. We turn now to Evans' specific contrary arguments. We observe that each of his arguments, if accepted, would mean that a Wisconsin disorderly conduct conviction *never* qualifies as a misdemeanor crime of domestic violence regardless of how the crime is charged, how the elements are stated for purposes of a plea, or how a jury is instructed. We question whether that would be a reasonable result, but we need not decide if it could be. As explained below, there are other reasons to reject Evans' individual arguments.

¶ 14. Evans concedes that some crimes are defined as having alternative elements such that the crime may or may not have the use of physical force as an element, depending on which alternative is the basis

---

[3] The criminal complaint against Evans sets forth the disorderly conduct charge as having an element of "violent, abusive *or* otherwise disorderly conduct." However, a transcript of Evans' plea hearing shows that the circuit court judge at that hearing explained the elements of the charge as requiring the State to show "violent, abusive *and* otherwise disorderly conduct." In his briefing, Evans twice characterizes the pertinent language in the conjunctive and once characterizes it in the disjunctive. Evans does not appear to take issue with the circuit court's conclusion here that he was charged with "violent, abusive, *and* otherwise disorderly conduct" (emphasis added). From this, we gather that Evans is not arguing that the difference matters. As we explain further below, however, we view the conjunctive phrasing as significant.

for a conviction. *See United States v. Evans*, 576 F.3d 766, 767–69 (7th Cir. 2009) (defendant charged with the second alternative of the Illinois crime of "intentionally or knowingly without legal justification and by any means, (1) caus[ing] bodily harm to an individual or (2) mak[ing] physical contact of an insulting or provoking nature with an individual," is not charged with "crime of violence"). Evans apparently contends, however, that disorderly conduct is not such a crime. He asserts that the different types of conduct listed in Wis. Stat. § 947.01(1) never serve as alternative elements. Rather, Evans seems to argue that the different types of conduct listed in the disorderly conduct statute are alternative "manner[s] and means" of committing the first element of the crime. If this is Evans' argument, we are not persuaded.

¶ 15. The "manner and means" discussions in the cases Evans relies on use that phrase as a reference to the specific conduct a defendant engages in to commit a charged crime. *See, e.g., United States v. Calderon-Pena*, 383 F.3d 254, 257 n.4 (5th Cir. 2004) (throwing a bottle at a person is not an element, but rather a "manner" of violating the crime of disturbing the peace). Evans points to nothing in these "manner and means" discussions that conflicts with our conclusion that Wisconsin's disorderly conduct statute can have the use of physical force as an element, such as where the "violent" alternative is charged alone or in the conjunctive with other alternatives.[4]

---

[4] We observe that "abusive" conduct does not necessarily denote violence or the use of physical force but instead could be either violent or nonviolent. The abusive conduct alternative in the disorderly conduct statute is thus, for our purposes, like the "insulting or provoking" contact alternative in the Illinois crime that the Seventh Circuit addressed in *United States v. Evans*,

¶ 16. In what appears to be a variation on his elements-versus-means-of-commission argument, Evans argues that the disorderly conduct statute is not "divisible," or at least not divisible in a sense that matters. Evans makes a distinction between "factual divisibility" and "legal divisibility." This argument, too, is inadequately supported. The cases that Evans offers in support do not address different types of "divisibility." *See generally United States v. Woods*, 576 F.3d 400 (7th Cir. 2009); *United States v. Smith*, 544 F.3d 781 (7th Cir. 2008); *United States v. Hays*, 526 F.3d 674 (10th Cir. 2008); *United States v. Sperberg*, 432 F.3d 706 (7th Cir. 2005). Only one of the cases speaks in terms of "divisibility," and it does so in a way that undercuts Evans' position. Specifically, in *Woods* the court said that a "divisible" statute is a statute that "expressly identifies several ways in which a violation may occur" or that "creates several crimes or a single crime with several modes of commission." *Woods*, 576 F.3d at 406, 411. This description in *Woods* is an apt description of disorderly conduct, which, in the words of *Woods*, "identifies several ways in which a violation may occur." *See id.* at 406.

¶ 17. Evans also relies on federal case law discussing the "categorical approach" or the "modified categorical approach," a methodology the courts use to determine whether a crime is "violent" or has the "use of physical force" as an element for purposes of federal statutes such as 18 U.S.C. § 921(a)(33)(A). However, we fail to see how the application of this approach helps Evans.

576 F.3d 766 (7th Cir. 2009). *See id.* at 768–69 (concluding that "insulting or provoking" contact under Illinois law encompasses both violent and nonviolent crimes).

■■

¶ 18. Under the categorical approach, courts ordinarily " 'look only to the fact of conviction and the statutory definition of the prior offense.' " *Shepard v. United States*, 544 U.S. 13, 17 (2005) (quoted source omitted). When a statute defines an element in the alternative, however, the categorical approach is "modified" to determine which alternative formed the basis of conviction. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). Under the modified categorical approach, courts consult a "limited class of documents," including charging documents, transcripts of plea colloquies, and jury instructions. *Id.* at 2281, 2286. The purpose of consulting such documents is "to identify, from among several alternatives, the crime of conviction." *Id.* at 2285.

¶ 19. Evans argues that the modified categorical approach focuses on the elements of the crime and prohibits consideration of "actual conduct" underlying the crime. Assuming, without deciding, that Evans is correct on this point, it does not change our analysis. We have not considered Evans' actual conduct in reaching our conclusion that his conviction satisfies the use-of-physical-force requirement.[5] We have considered only the fact of his conviction, the statutory definition of disorderly conduct, and the permitted "class of documents." And, we have used those documents—namely, the criminal complaint and the plea colloquy transcript —only to determine which alternative type of disorderly conduct formed the basis for Evans' conviction.

---

[5] During his plea colloquy, Evans admitted to pushing his stepdaughter out of a door but not to a number of more serious allegations in the criminal complaint.

We have not relied on any source to determine the basis of his conviction with reference to Evans' actual conduct.

¶ 20. We emphasize that we are not faced with deciding whether Evans' crime would disqualify him if the record showed that he entered a plea based on an element of violent, abusive, *or* otherwise disorderly conduct. For that matter, we do not address other situations in which defendants enter pleas or are convicted following trials in which the alternatives are specified in the disjunctive charging that routinely occurs in disorderly conduct cases. In our view, the fact that Evans was convicted based on the element of violent, abusive, *and* otherwise disorderly conduct makes this a relatively easy case.

¶ 21. We further observe that, even though 18 U.S.C. § 921(a)(33)(A) has existed for approximately 18 years, *see Hayes*, 555 U.S. at 418, Evans points to *no* case in which a court has concluded that a disorderly conduct conviction never qualifies as a misdemeanor crime of domestic violence. The Department, in contrast, points to a handful of cases in which courts have recognized, as we now do, that a disorderly conduct conviction may qualify at least some of the time. *See United States v. Frausto-Vasquez*, 435 Fed. Appx. 575, 576, 2011 WL 4011430, unpublished op. (8th Cir. 2011) (addressing Wisconsin's disorderly conduct statute); *United States v. Medicine Eagle*, 266 F. Supp. 2d 1039, 1043–45 (D.S.D. 2003); *Pennsylvania State Police v. McPherson*, 831 A.2d 800, 806–07 (Pa. Commw. Ct. 2003).

¶ 22. Evans argues that the courts in those cases misapplied the modified categorical approach by relying on the defendant's actual conduct to determine whether the disorderly conduct conviction in question involved

the use of physical force. Even if Evans is correct in that regard, however, we repeat that we have not relied on Evans' actual conduct.

¶ 23. Evans' next argument relates to the meaning of the use of "physical force" under 18 U.S.C. § 921. Evans asserts that the federal circuits have uniformly defined the term as requiring that the force in question be directed at a person. He further asserts that the crime of disorderly conduct does not require a victim. Based on these two assertions combined, Evans argues that disorderly conduct can never have, "as an element," the use of physical force. We reject Evans' first assertion, and therefore reject his argument.

¶ 24. The federal cases that Evans cites are not uniform in the way Evans says. At least one of the cases provides a definition of the use of physical force in which force need not be directed at a person. *See United States v. White*, 606 F.3d 144, 153 (4th Cir. 2010) (defining "physical force" as a force " '*capable* of causing physical pain or injury to another person' " (emphasis added; quoted source omitted)). Regardless, the cases do not support Evans' argument. None of them addresses whether a crime must include, *as an element*, that the physical force is *directed against a person*. Rather, as the Department points out, those cases address the topic of how much force is required. *See id.* at 147–48; *United States v. Griffith*, 455 F.3d 1339, 1341–45 (11th Cir. 2006); *United States v. Belless*, 338 F.3d 1063, 1068 (9th Cir. 2003); *see also United States v. Nason*, 269 F.3d 10, 15–18 (1st Cir. 2001) (the use of "physical force" need not result in bodily injury or risk of harm).

¶ 25. Of course it is true that any qualifying crime under 18 U.S.C. § 921(a)(33)(A) must, as a factual matter, have a victim. But it is the *second* of the two

requirements in § 921(a)(33)(A)(ii) that makes this true. We now turn to that requirement.

*2. Second Requirement: Committed By A Person Who Has A Specified Domestic Relationship With The Victim*

¶ 26. Under the second requirement, the qualifying crime must be committed by a person who has a specified domestic relationship with the victim. Here, the victim was Evans' stepdaughter.

¶ 27. The Supreme Court explained in *Hayes* that the elements-focused analysis that applies to the first requirement does not apply to the second requirement. Rather, the test is whether the conviction "was, in fact, for 'an offense . . . committed by' the defendant against a spouse or other domestic victim" as defined in the federal statute. *Hayes*, 555 U.S. at 421. Thus, our focus now shifts from the elements of disorderly conduct to Evans' relationship with the victim.

¶ 28. The dispositive question is how to interpret the part of 18 U.S.C. § 921(a)(33)(A) requiring that the person committing the qualifying crime be

> a current or former spouse, parent, or guardian of the victim, . . . a person with whom the victim shares a child in common, . . . a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or . . . a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A)(ii).

¶ 29. The parties dispute whether Evans was "similarly situated" to a parent. Evans argues that he was not "similarly situated" because the victim was an adult at the time of the offense, and Evans was never involved in her parenting. We are not persuaded.

301

¶ 30. Neither Evans nor the Department provides a case addressing the question at hand, and we have not found one. Regardless, we conclude that a stepparent is "similarly situated" to a parent under the statute. The statute is plainly intended to cover a broad range of family and family-like relationships. Excluding stepparents, even those who do not actively "parent" a stepchild, would run contrary to Congress's intent that the statute be broadly applied. *See Woods v. City and County of Denver*, 122 P.3d 1050, 1055 (Colo. App. 2005) (stating that "Congress intended the statute to have broad application and enforcement." (citing *United States v. Smith*, 964 F. Supp. 286 (N.D. Iowa 1997), *aff'd*, 171 F.3d 617 (8th Cir. 1999))).

## Conclusion

¶ 31. For the reasons stated above, we affirm the circuit court's order upholding the Department's decision to deny Evans' application for a license to carry a concealed weapon.

*By the Court.*—Order affirmed.