STATE of Wisconsin, Plaintiff-Respondent,

v.

Rogelio GUARNERO, Defendant-Appellant.†

Court of Appeals

*Nos. 2013AP1753–CR, 2013AP1754–CR.*
*Submitted on briefs April 1, 2014.—Decided April 29, 2014.*

2014 WI App 56

(Also reported in 848 N.W.2d 329.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Robert J. Eddington*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Sara Lynn Larson*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Rogelio Guarnero appeals the judgment entered after a bench trial convicting him of unlawfully possessing cocaine, as a second offense, *see* Wis. Stat. § 961.41(3g)(c), and felony bail jumping, *see* Wis. Stat. § 946.49(1)(b). He also appeals the circuit court's order denying his motion for postconviction relief. He claims that the circuit court improperly used Guarnero's federal conviction, entered on his guilty plea, for violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, as the second-offense predicate under § 961.41(3g)(c), and that therefore his cocaine-possession conviction should have been a misdemeanor rather than a felony. The bail-jumping charge arose out of his receipt of stolen property, *see* Wis. Stat. § 943.34(1)(a), while he was out on bond in connection with the cocaine charge. He pled guilty to the bail-jumping charge but argues it should have been a misdemeanor bail-jumping conviction, because, as noted, he says that the cocaine matter should have been charged as a misdemeanor. There are no disputed material facts on this appeal, and we affirm.

309

# I.

¶ 2. A United States grand jury charged Guarnero and forty-eight others with violating the Racketeer Act. The case was plea-bargained and Guarnero pled guilty to Count Two of the indictment, which, as material, alleged that Guarnero and others "were members and associates of the Latin Kings, a criminal organization whose members and associates engaged in acts of violence, including murder, attempted murder, robbery, extortion *and distribution of controlled substances,* and which operated principally on the south side of Milwaukee." (Emphasis added.) Count Two charged, as material, that Guarnero and others "knowingly and intentionally conspired to violate Title 18, United States Code § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity involving . . . multiple acts *involving the distribution of controlled substances including cocaine, cocaine base in the form of 'crack' cocaine and marijuana* in violation of the laws of the United States," and that this violated the conspiracy section, 18 U.S.C. § 1962(d). In the plea-bargained agreement, which both Guarnero and his then-lawyer signed, Guarnero not only agreed to plead guilty to Count Two of the indictment but also specifically affirmed that he "acknowledges, understands, and agrees that he is, in fact, guilty of the offense" charged in Count Two of the indictment.

¶ 3. 18 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of *racketeering activity* or collection of unlawful debt.

(Emphasis added.) 18 U.S.C. § 1962(d) provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." We emphasize the words "racketeering activity" in § 1962(c) because, as we will see, that phrase is expansively defined by the Act and sets out many different ways a person can violate the Act, including unlawful acts in connection with controlled substances. *See* 18 U.S.C. §§ 1961(1)(A) & 1961(1)(D); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 481–482 (1985) (The Racketeer Act "takes aim at 'racketeering activity,' which it defines as any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud *or drug-related activities* that is 'punishable' under federal law.") (emphasis added; quoting 18 U.S.C. § 1961(1)).

¶ 4.   The State charged Guarnero with violating WIS. STAT. § 961.41(3g)(c), and, as we have seen, the circuit court found him guilty of that crime. Section 961.41(3g) provides, as material:

> No person may possess or attempt to possess a controlled substance or a controlled substance analog unless the person obtains the substance or the analog directly from, or pursuant to a valid prescription or order of, a practitioner who is acting in the course of his or her professional practice, or unless the person is otherwise authorized by this chapter to possess the substance or the analog. Any person who violates this subsection is subject to the following penalties:
>
> . . . .
>
> (c) *Cocaine and cocaine base. If a person possess[es] or attempts to possess cocaine or cocaine base, or a controlled substance analog of cocaine or cocaine base,*

311

the person shall be fined not more than $5,000 and may be imprisoned for not more than one year in the county jail upon a first conviction and *is guilty of a Class I felony for a 2nd or subsequent offense. For purposes of this paragraph, an offense is considered a 2nd or subsequent offense if, prior to the offender's conviction of the offense, the offender has at any time been convicted* of any felony or misdemeanor under this chapter or *under any statute of the United States* or of any state *relating to controlled substances, controlled substance analogs, narcotic drugs, marijuana, or depressant, stimulant, or hallucinogenic drugs.*

(Introduction's italics in original; emphasis added.) Thus, in order to be a "2nd or subsequent offender" under § 961.41(3g)(c), the person, as material here, must have "been convicted of any felony or misde-meanor . . . under any statute of the United States . . . *relating to controlled substances.*" (Emphasis added.) The circuit court held "that count two of the federal indictment related to distribution of controlled sub-stances, including cocaine and other drugs."

¶ 5.    Guarnero contends that his conviction on his guilty plea to Count Two of the federal indictment does not satisfy WIS. STAT. § 961.41(3g)(c)'s enhancement provision because, according to him, the Racketeer Act, and, specifically 18 U.S.C. § 1962(d), is not a statute and not a section "relating to controlled substances," as required by § 961.41(3g)(c). As phrased by his state-ment of the "issues presented," he argues that the Racketeer Act "is a statute relating to racketeering, not drugs; which on its face says nothing about controlled substances; and which requires no proof that anyone (let alone the defendant) has committed any controlled substance violation[.]" As explained below, we disagree.

312

**II.**

■

¶ 6.   Our review on this statutory-interpretation appeal is *de novo. See Village of Shorewood v. Steinberg,* 174 Wis. 2d 191, 201, 496 N.W.2d 57, 61 (1993). Further, we apply a statute as it is written unless it is constitutionally infirm or its text does not reveal the legislature's intent. *See State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶¶ 43–44, 271 Wis. 2d 633, 661–662, 681 N.W.2d 110, 123–124.

¶ 7.   As seen in the footnote to this sentence, the Racketeer Influenced and Corrupt Organizations Act's definition of "racketeering activity" is broad.[1] Among

---

[1] 18 U.S.C. § 1961(1) says that "racketeering activity":

means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, *or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year;* (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1351 (relating to fraud in foreign labor contracting), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461–1465 (relating to obscene mat-

the things it sweeps into the definition are:   "dealing in
a controlled substance or listed chemical (as defined in

ter), section 1503 (relating to obstruction of justice), section 1510
(relating to obstruction of criminal investigations), section 1511
(relating to the obstruction of State or local law enforcement),
section 1512 (relating to tampering with a witness, victim, or an
informant), section 1513 (relating to retaliating against a witness,
victim, or an informant), section 1542 (relating to false statement
in application and use of passport), section 1543 (relating to
forgery or false use of passport), section 1544 (relating to misuse of
passport), section 1546 (relating to fraud and misuse of visas,
permits, and other documents), sections 1581–1592 (relating to
peonage, slavery, and trafficking in persons), section 1951 (relating
to interference with commerce, robbery, or extortion), section 1952
(relating to racketeering), section 1953 (relating to interstate
transportation of wagering paraphernalia), section 1954 (relating
to unlawful welfare fund payments), section 1955 (relating to the
prohibition of illegal gambling businesses), section 1956 (relating
to the laundering of monetary instruments), section 1957 (relating
to engaging in monetary transactions in property derived from
specified unlawful activity), section 1958 (relating to use of inter-
state commerce facilities in the commission of murder-for-hire),
section 1960 (relating to illegal money transmitters), sections
2251, 2251A, 2252, and 2260 (relating to sexual exploitation of
children), sections 2312 and 2313 (relating to interstate transpor-
tation of stolen motor vehicles), sections 2314 and 2315 (relating
to interstate transportation of stolen property), section 2318
(relating to trafficking in counterfeit labels for phonorecords,
computer programs or computer program documentation or pack-
aging and copies of motion pictures or other audiovisual works),
section 2319 (relating to criminal infringement of a copyright),
section 2319A (relating to unauthorized fixation of and trafficking
in sound recordings and music videos of live musical perfor-
mances), section 2320 (relating to trafficking in goods or services
bearing counterfeit marks), section 2321 (relating to trafficking in
certain motor vehicles or motor vehicle parts), sections 2341–2346
(relating to trafficking in contraband cigarettes), sections 2421–24
(relating to white slave traffic), sections 175–178 (relating to
biological weapons), sections 229–229F (relating to chemical weap-
ons), section 831 (relating to nuclear materials), (C) any act which
is indictable under title 29, United States Code, section 186
(dealing with restrictions on payments and loans to labor organi-
zations) or section 501(c) (relating to embezzlement from union

314

section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). The definition also includes "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States." 18 U.S.C. § 1961(1)(D).

██

¶ 8.   As we have seen, Guarnero pled guilty to Count Two of the federal indictment, which charged that Guarnero violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). Although neither section references controlled substances *in haec verba,* they do, of course, make unlawful "racketeering activity" and conspiring to engage in "racketeering activity" which, as we have seen, is defined by the Racketeer Act to include activities involving controlled substances, such as cocaine. Thus, the circuit court correctly concluded that the Racketeer Act and 18 U.S.C. §§ 1962(c)

funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, *or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States,* (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B).

(Emphasis added; footnote omitted.)

& (d) are a statute and sections "relating to controlled substances" as that phrase is used in WIS. STAT. § 961.41(3g)(c). This is in keeping with the rule most recently recognized by the United States Supreme Court in *United States v. Castleman*, 572 U.S. ___, 134 S. Ct. 1405 (2014), and *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276 (2013), which permit looking at a charging document and a guilty plea (among other things that we do not have to decide for the purposes of this appeal) when a predicate criminal statute has alternate paths to conviction. We asked the parties to submit letter briefs addressing how *Descamps* and *Castleman* affected this appeal. For the reasons discussed below, we believe these decisions are dispositive.

■

¶ 9.  Statutes that enhance a conviction's penalty or impose a restriction because the defendant has violated some other law are common. *See, e.g., Evans v. Wisconsin Dep't of Justice*, 2014 WI App 31, ¶ 4, 353 Wis. 2d, 289, 292, 844 N.W.2d 403, 404 ("Under 18 U.S.C. § 922(g)(9), it is 'unlawful for any person . . . who has been convicted . . . of a misdemeanor crime of domestic violence . . . [to] possess in or affecting commerce, any firearm or ammunition.' ") (ellipses and brackets in *Evans*; quoting 18 U.S.C. § 922(g)(9)); *State v. Moline*, 229 Wis. 2d 38, 39–40, 43, 598 N.W.2d 929, 930, 931–932 (Ct. App 1999) (conviction for unlawfully possessing "drug paraphernalia" could permissibly enhance the penalties for unlawfully possessing cocaine). *Evans* described the two approaches that courts use to see if the alleged enhancing conviction carries its burden—the "categorical approach" and the "modified categorical approach":

> Under the categorical approach, courts ordinarily " 'look only to the fact of conviction and the statutory

> definition of the prior offense.' " When a statute defines an element in the alternative, however, the categorical approach is "modified" to determine which alternative formed the basis of conviction. Under the modified categorical approach, courts consult a "limited class of documents," including charging documents, transcripts of plea colloquies, and jury instructions. The purpose of consulting such documents is "to identify, from among several alternatives, the crime of conviction."

*Evans*, 2014 WI App 31, ¶ 18, 353 Wis. 2d, at 298, 844 N.W.2d at 407 (relying in part on *Descamps*; internal citations and quoted sources omitted).

¶ 10. *Descamps* concerned a person convicted of violating the federal law forbidding felons from possessing firearms. *Descamps*, 133 S. Ct. at 2282. The United States sought to enhance his penalty under the Armed Career Criminal Act, 18 U.S.C. § 924(e), using his earlier state convictions for "burglary, robbery, and felony harassment." *Descamps*, 133 S. Ct. at 2282. Under the Armed Career Criminal Act, a defendant is subject to an enhanced sentence if he or she " 'has three previous convictions . . . for a violent felony or a serious drug offense.' " *Ibid* (quoting 18 U.S.C. § 924(e)(1)). Descamps argued that his "burglary" crime under California law was not "a violent felony" because the statute under which he was convicted did not have "unlawful entry" as an element even though he had in fact committed the crime *via* an unlawful entry. *Ibid.* The federal trial and appellate courts disagreed with Descamps's contention that they were limited to the burglary statute's stated elements, and applied the so-called "modified categorical approach," which enabled them to look at what Descamps had done. *Ibid. Descamps* held, however, that this approach is permitted only when the "generic crime" (in *Descamps*, burglary under the California statute) was "divisible"; that

is, when the generic crime could be committed in various ways, including the enhancing element. *Id.*, 133 S. Ct. at 2285. Because the California burglary statute did not have as one of its alternate elements "breaking and entering," the sentencing court could not refer to the secondary sources of information permitted by the modified categorical approach. *Ibid.*

> Whether Descamps *did* break and enter makes no difference. And likewise, whether he ever admitted to breaking and entering is irrelevant. Our decisions authorize review of the plea colloquy or other approved extra-statutory documents only when a statute defines burglary not (as here) overbroadly, but instead alternatively, with one statutory phrase corresponding to the generic crime and another not. In that circumstance, a court may look to the additional documents to determine which of the statutory offenses (generic or nongeneric) formed the basis of the defendant's conviction.

133 S. Ct. at 2286 (emphasis and parentheticals in *Descamps*).

¶ 11. *Castleman* concerned a state statute that the parties agreed was "divisible," and reaffirmed that under *Descamps* "[w]e may accordingly apply the modified categorical approach, consulting the indictment to which Castleman pleaded guilty in order to determine whether his conviction did entail the elements necessary to constitute the generic federal offense" of previously having been convicted of a " 'misdemeanor crime of domestic violence' " that permitted the enhancement of his federal sentence. *Castleman*, 134 S. Ct. at 1414–1415. Put succinctly:

- If the face of the statute (here, the Racketeer Act) reveals that there is more than one route to conviction, and

318

- one of those routes satisfies an enhancement prerequisite, then

- a court asked to apply the enhancement may look to see what route the defendant took towards his or her conviction.

Significantly, although, the modified categorical approach here allowed the State to charge and the circuit court to convict Guarnero for unlawful possession of cocaine as a second offense, the modified categorical approach will *benefit* other defendants whose acts underlying their convictions did not satisfy the enhancement criteria, as would be the situation if, for example, a defendant potentially subject to the Wis. Stat. § 961.41(3g)(c) enhancement was charged under the Racketeer Act with having engaged in "racketeering activity" because he or she "traffick[ed] in counterfeit labels for phonorecords, computer programs or computer program documentation," 18 U.S.C. § 1961(B), rather than, as here, controlled substances.

██

¶ 12.  To sum up, there are many, many ways that a person may violate 18 U.S.C. §§ 1962(c) & (d). Accordingly, the provisions, which incorporate the expansive definition of "racketeering activity," are "divisible," and this permits use of the modified categorical approach. Thus, the circuit court and we may look at the indictment to which Guarnero pled guilty as well as his plea-bargained acknowledgment that he was "in fact, guilty of the offense" set out in Count Two of the indictment. Guarnero's contention that his guilty plea to Count Two was therefore not a plea to a crime under a "statute of the United States . . . relating to controlled substances," as required by Wis. Stat. § 961.41(3g)(c), is without merit.

¶ 13.    In a further attempt to get us to ignore the clear import of "relating to," Guarnero argues we should apply the "rule of lenity" because, he claims, no other Wisconsin court has considered whether the Racketeer Act can be a statute "relating to controlled substances." *See State v. Cole*, 2003 WI 59, ¶ 13, 262 Wis. 2d 167, 174, 663 N.W.2d 700, 703 ("[W]hen there is doubt as to the meaning of a criminal statute, a court should apply the rule of lenity and interpret the statute in favor of the accused."). He also claims a due-process violation because he says that he did not have "fair warning" that his plea to Count Two of the indictment could subject him to the repeater provision of WIS. STAT. § 961.41(3g)(c). But, as we have set out at some length, the analysis here is straightforward and conclusive; there is no "doubt" as to what the Racketeer Act says are the activities that it proscribes. Accordingly, we need only quote *Castleman* because what it said in response to a comparable request also applies here:

> We are similarly unmoved by Castleman's invocation of the rule of lenity. Castleman is correct that our "construction of a criminal statute must be guided by the need for fair warning." But "the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." That is not the case here.

*Castleman*, 134 S. Ct. at 1416 (internal citations and quoted sources omitted). It is not the case here either.

¶ 14.    As noted earlier, Guarnero's contention that his felony bail-jumping conviction should be modified to a misdemeanor bail-jumping conviction turns on

whether the circuit court properly convicted him of felony possession of cocaine. We thus affirm the circuit court in all respects.

*By the Court.*—Judgment and order affirmed.