# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 9, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1133-CR**

Cir. Ct. No. **2020CM539**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHAEL L. NELSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Kenosha County:  LARISA V. BENITEZ-MORGAN, Judge.  *Affirmed*.

¶1      KORNBLUM, J.[1]     Michael L. Nelson appeals from a judgment convicting him of disorderly conduct with use of a dangerous weapon, domestic

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

abuse, and operating a firearm while intoxicated and from an order denying his motion for postconviction relief. Nelson raises one issue on appeal: he is entitled to an evidentiary hearing on his postconviction motion to withdraw his guilty pleas. The basis of this motion is his claim that his trial counsel was ineffective because counsel gave him incorrect legal advice, that "pleading to disorderly conduct could result in a temporary rather than permanent loss of his gun rights." We conclude that Nelson's postconviction motion failed to allege sufficient facts demonstrating deficient performance by trial counsel because the advice correctly stated the law. Accordingly, we affirm the circuit court's order denying the motion without a ***Machner***[2] hearing.

## BACKGROUND

¶2      According to the criminal complaint, on April 26, 2020, law enforcement responded to Nelson's home following a 911 call from Nelson's wife. She alleged that Nelson "was intoxicated and beating up his adult children." When police arrived, Nelson was being restrained by his daughter and son, and he "appeared to be highly intoxicated and … was slurring his words." He informed the officers that he had a gun, and officers confirmed that fact. A struggle ensued while officers attempted to simultaneously disarm Nelson and put him in handcuffs, with Nelson resisting officers' commands and stating that "he was not going to be handcuffed and that he was not going to go with [o]fficers." While officers were unaware of the status of the firearm and with Nelson continuing to resist, the officers were forced to use an "Electronic Control Device" on Nelson

---

[2] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

multiple times while restraining him on the ground. The officers eventually took Nelson into custody.

¶3      Nelson's wife and children thereafter gave statements to police. Each reported a verbal altercation. Nelson's wife explained that Nelson was being "verbally aggressive toward her for no reason at all," so she removed herself from the situation by going into the bathroom. Nelson's son and daughter told officers that the "incident was only verbal," although his wife reported that she "heard what sounded like a loud slap and so she left the bathroom whereupon [she] saw [the daughter] holding her face and crying." Nelson's son and daughter reported that things escalated when Nelson "pulled his handgun from his waistline and began to swing his hand around with the loaded gun" while stating that "he wanted to 'shoot' himself and that if anyone in the house called the police, he would kill himself." Nelson's wife then called 911.

¶4      The State charged Nelson with disorderly conduct with use of a dangerous weapon, domestic abuse; possession of a firearm while intoxicated; and resisting an officer. Pursuant to a plea agreement, Nelson pled guilty to the charges of disorderly conduct with a dangerous weapon and possession of a firearm while intoxicated. The charge for resisting an officer was dismissed and read in. Nelson pled guilty to disorderly conduct as alleged in the complaint: that he "did engage in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct." In the plea colloquy, the court reviewed the specific allegations in the complaint: "For the crime of disorderly conduct, domestic abuse, use of a dangerous weapon, the elements that the State would have had to have shown is that you engaged in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct." Nelson did not

object to using the complaint as the factual basis. After a plea colloquy, the circuit court accepted Nelson's plea.

¶5 The circuit court withheld sentence and placed Nelson on probation for two years on each count, with six months' conditional jail time for the disorderly conduct charge and three months' conditional jail time for the operating a firearm while intoxicated charge, to be served concurrently. As a condition of his probation, the court ordered that Nelson was not to possess any firearms.

¶6 Nelson filed a motion for postconviction relief. He sought to withdraw his guilty plea based on ineffective assistance of counsel, arguing that trial counsel performed deficiently by providing him incorrect information pertaining to the collateral consequences of his plea. Nelson stated that he would testify to the following: "His trial attorney advised him that pleading guilty to disorderly conduct could have a temporary rather than permanent effect on his right to possess a firearm." He further alleged that trial counsel's deficient performance prejudiced him as

> Mr. Nelson has been a longtime gun owner and has worked as a security guard. As a result, it was and is important to Mr. Nelson that he not permanently lose his right to possess a firearm.

> If trial counsel had not misinformed Mr. Nelson regarding the possibility that a disorderly conduct conviction would result in a permanent loss of his right to possess a firearm, he would not have pled guilty and instead would have insisted on going to a jury trial.

¶7 The circuit court scheduled a *Machner* hearing but ultimately denied Nelson's motion without accepting testimony. At the hearing, the State immediately raised the issue of "the sufficiency of the motion," explaining that the advice "as that is phrased" in the motion "appears to be correct." Both parties

4

agreed that under the applicable state and federal law, it is not certain that Nelson's conviction would result in his inability to possess a firearm under federal law. Thus, as the State observed, "his attorney expressed uncertainty about that issue," which the court suggested is "correct advice. It could. Maybe it couldn't." Nelson argued that trial counsel's statement meant "that it would potentially have a temporary effect [and] that it wouldn't have a permanent effect." The circuit court disagreed, noting that Nelson was "add[ing] a word" and finding that the motion had not been properly pled. The court indicated that Nelson was welcome to refile his motion as if trial counsel had "told him under no circumstances are you going to permanently lose your license, then … that's a different situation." Nelson appeals.

## DISCUSSION

¶8    On appeal, Nelson argues that he is entitled to an evidentiary hearing on his postconviction motion to withdraw his guilty pleas, based on incorrect information about potential collateral consequences of a guilty plea. We thus go through a multi-step process of analysis. "To withdraw a guilty plea after sentencing, a defendant must show by clear and convincing evidence that a refusal to allow withdrawal of the plea would result in manifest injustice, that is, that there are 'serious questions affecting the fundamental integrity of the plea.'" *State v. Dillard*, 2014 WI 123, ¶36, 358 Wis. 2d 543, 859 N.W.2d 44 (citation omitted); *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996).

¶9    A defendant may demonstrate manifest injustice by establishing that he or she received ineffective assistance of counsel. *Dillard*, 358 Wis. 2d 543, ¶84. To do so, the defendant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defendant. *Id.*, ¶85;

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To prove deficient performance, a defendant must show specific acts or omissions of counsel that are 'outside the wide range of professionally competent assistance.'" *State v. Arredondo*, 2004 WI App 7, ¶24, 269 Wis. 2d 369, 674 N.W.2d 647 (citation omitted). To prove prejudice, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dillard*, 358 Wis. 2d 543, ¶95 (citation omitted). Where the issue involves a plea withdrawal, a defendant must establish a reasonable probability that he or she would not have pled and would have gone to trial but for counsel's ineffective performance. *Id.*, ¶96. If the defendant fails on one prong, we need not examine the other prong. *Strickland*, 466 U.S. at 697.

¶10    A defendant is not automatically entitled to an evidentiary hearing on his or her postconviction motion. *Bentley*, 201 Wis. 2d at 309. The circuit court is required to hold an evidentiary hearing only if the defendant alleges "sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. Whether a defendant's motion "on its face" alleges sufficient material facts to entitle that defendant to relief is a question of law that we review de novo. *Id.*, ¶9. If, on the other hand, the defendant's motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the circuit court may either grant or deny a hearing in its discretion. *Id.* We review this decision "under the deferential erroneous exercise of discretion standard." *Id.*

*Legal Principles Regarding Firearm Possession Underlying Nelson's Claim*

¶11     Nelson argues that his attorney's advice was legally deficient because "his trial attorney advised him that pleading guilty to disorderly conduct could result in a temporary rather than permanent loss of his right to possess a gun." According to Nelson, "[t]his advice from trial counsel clearly demonstrates deficient performance because it is legally incorrect—Mr. Nelson's disorderly conduct conviction would likely result in a permanent prohibition on his ability to possess a gun and obtain a CCW license [(carrying a concealed weapon)], and the prohibition could not be temporary."

¶12     We begin by examining Nelson's assumption that the collateral consequence of his guilty plea "would likely" be a permanent bar to possessing a firearm. This is not a correct assumption, as we explain.

¶13     Whether Nelson's conviction of the misdemeanor crime of disorderly conduct in the context of domestic violence, under WIS. STAT. § 947.01, would result in a permanent prohibition on possessing firearms depends on the specific nature of the conviction and an interplay between state and federal law. Under federal law, 18 U.S.C. § 922(g)(9), it is "unlawful for any person … who has been convicted in any court of a misdemeanor crime of domestic violence … [to] possess in or affecting commerce, any firearm or ammunition." A "misdemeanor crime of domestic violence" is defined by statute as an offense that

> (i) is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting

with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A). Under state law, WIS. STAT. § 175.60(3)(b) provides that the Department of Justice shall not issue a CCW license to an individual who "is prohibited under federal law from possessing a firearm."

¶14 Nelson's disorderly conduct conviction meets the first prong because it is a misdemeanor under Wisconsin law. We then turn to the second prong, whether the misdemeanor meets the definition of "crime of domestic violence." This court previously considered this question in *Evans v. DOJ*, 2014 WI App 31, ¶5, 353 Wis. 2d 289, 844 N.W.2d 403 (citation omitted), in which we explained that the second prong of the definition itself has two parts: (1) there must be an element of "the use or attempted use of physical force" and (2) it must be committed by a person who has a domestic relationship with the victim.[3] *See also United States v. Hayes*, 555 U.S. 415, 426 (2009).

¶15 In *Evans*, we considered whether use of physical force was an element of a disorderly conduct conviction for the purposes of 18 U.S.C. § 921(a)(33)(A). *Evans*, 353 Wis. 2d 289, ¶2. Observing that the first element of disorderly conduct, pursuant to WIS. STAT. § 947.01(1), "allows for alternatives," we noted that Evans, unlike Nelson, was convicted of disorderly conduct based on "violent, abusive *and* otherwise disorderly conduct" and "'violent' conduct necessarily implies the use of physical force." *See Evans*, 353 Wis. 2d 289, ¶¶9, 10, 12 (emphasis added). We explained that the use of the conjunctive phrasing

---

[3] The conviction in this case clearly meets the second part of the test because the victims were his wife and adult children.

was "significant" and suggested that the case may have been decided differently "if the record showed that he entered a plea based on an element of violent, abusive, *or* otherwise disorderly conduct." *Id.*, ¶¶12 n.3, 20. In *Evans*, the court based its decision solely on the criminal complaint and the plea colloquy transcript to determine "which alternative type of disorderly conduct formed the basis for Evans' conviction." *Id.*, ¶19. The court did not consider the actual conduct underlying the charge. *Id.* Because Evans' conviction was based on "violent, abusive, and otherwise disorderly conduct," the conviction qualified under Federal law as a crime having an element of physical force. *Id.*, ¶2 (citation omitted).

¶16    The *Evans* court specifically did not reach the issue of what the result would be if Evans had pled guilty to a disorderly conduct crime charged in the disjunctive. *Id.*, ¶20. Here, the parties agree that Nelson pled guilty to a crime charged in the disjunctive (where the term "or" was used) rather than the conjunctive (where the term "and" was used, as in *Evans*). The criminal complaint defined Nelson's offense as "engag[ing] in violent, abusive, indecent, profane, boisterous, unreasonably loud *or* otherwise disorderly conduct." (Emphasis added.) The parties also agree that there is no other binding authority on point. Even Nelson acknowledges that the consequences of his disorderly conduct conviction are by no means certain. At most, he can only argue that the conviction "would likely" result in a bar on owning a firearm. His support depends on looking at the underlying facts in the criminal complaint. However, it is clear that in *Evans*, the charge, not the facts of the underlying complaint, governed the determination of whether the crime was a crime of violence. *Id.*, ¶¶19, 22. Thus, under the applicable case law, the parties acknowledge that it is unclear whether Nelson's disorderly conduct conviction would permanently prevent him from possessing a firearm.

*The Circuit Court Did Not Err in Refusing a **Machner** Hearing*

¶17    All Nelson alleges in support of his postconviction motion is that trial counsel advised him that pleading guilty to disorderly conduct "could result in a temporary rather than permanent loss of his right to possess a gun." This advice is not "legally incorrect." The law is not clear on the collateral consequences of a conviction such as this one.

¶18    The fact that uncertainty exists regarding the outcome of Nelson's future gun possession rights does not mean that trial counsel was ineffective. Any misunderstanding on Nelson's part cannot clearly be labeled a misstatement of the law. *See **Birts v. State***, 68 Wis. 2d 389, 397, 228 N.W.2d 351 (1975) ("The important point here is that the alleged misunderstanding concerned indirect consequences of the plea, defendant's parole rights, and that absolutely no commitment was made as to those rights…. His beliefs concerning his release time were the product of his own mind and entirely unexpressed in the plea bargaining process.").

¶19    Nelson did not argue that trial counsel told him that there would be no permanent impact on his gun rights, which, as the circuit court observed, would indeed have been a misstatement of the law and grounds for a ***Machner*** hearing.[4] *See **State v. Rodriguez***, 221 Wis. 2d 487, 498-99, 585 N.W.2d 701 (Ct. App. 1998) (collecting cases addressing incorrect information giving rise to ineffective

---

[4] Nelson now raises the claim that trial counsel's advice pertained to whether the federal firearm ban itself could be temporary rather than permanent—if prohibited from possessing a firearm under 18 U.S.C. § 922(g)(9) that determination would not be temporary. This is a new argument raised for the first time on appeal. As such, we will not consider it. ***State v. Dowdy***, 2012 WI 12, ¶5, 338 Wis. 2d 565, 808 N.W.2d 691 (an issue not raised in the circuit court will not be considered for the first time on appeal).

assistance of counsel); *see also* **State v. Brown**, 2004 WI App 179, ¶8, 276 Wis. 2d 559, 687 N.W.2d 543 (noting that Wisconsin courts have permitted defendants to withdraw pleas based on being "*mis*informed of [the] consequences").

¶20    In conclusion, the circuit court correctly exercised discretion in not granting a **Machner** hearing because trial counsel's advice was not legally incorrect. Thus, based on the information presented, Nelson has not raised facts sufficient to establish that trial counsel performed deficiently.  Accordingly, we need not reach the issue of prejudice.  The circuit court did not err in denying Nelson's postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.