*549 SHIRLEY S. ABRAHAMSON, C.J.
¶ 1. Myron C. Dillard, the defendant, was convicted of armed robbery and sentenced to 25 years of confinement and 15 years of extended supervision after a negotiated plea agreement. The circuit court for Winnebago County, Scott C. Woldt, Judge, denied the defendant's postconviction motion to withdraw his no-contest plea. The court of appeals reversed the judgment of conviction and the circuit court's order denying the defendant's postconviction motion. We now review the decision of the court of appeals.[1]
¶ 2. Two issues of law are presented:
¶ 3. The first issue is whether, under the totality of the circumstances, the defendant has the right as a matter of law to withdraw his no-contest plea on the ground that it was not entered knowingly, intelligently, and voluntarily. The basis for the defendant's challenge to his plea is that when he was deciding whether to accept the State's plea offer or go to trial, the State, the court, and the defendant's trial counsel mistakenly advised the defendant that he was facing a mandatory sentence of life in prison without the possibility of extended supervision.
¶ 4. The second issue is whether, under the totality of the circumstances, the defendant has the right as a matter of law to withdraw his no-contest plea on the ground that he has demonstrated ineffective assistance of counsel. The alleged ineffective assistance of counsel is that defendant's trial counsel mistakenly advised the defendant that he was facing a mandatory sentence of life in prison without the possibility of extended supervision if he did not accept the State's plea offer.
*550 ¶ 5. The error of law in the instant case, which permeated the entire proceeding and which is the basis of the defendant's claims, was the State's erroneous attachment of a persistent repeater enhancer to the armed robbery charge.
¶ 6. If the defendant had been convicted of armed robbery under the persistent repeater statute, he would have faced a mandatory sentence of life in prison without the possibility of extended supervision. It is undisputed that the defendant did not meet the criteria for being a persistent repeater. The error did not come to light until after sentencing. Thus, the State, the court, the defendant's trial counsel, and the defendant proceeded under the mistaken belief that the persistent repeater enhancer applied to the defendant and that he therefore could have faced a mandatory life sentence if he did not accept the State's offer and enter a plea.
¶ 7. The circuit court denied the defendant's post-conviction motion to withdraw his no-contest plea, holding that the plea was knowing, intelligent, and voluntary and that the defendant did not receive ineffective assistance of counsel.
¶ 8. The court of appeals reversed the judgment of conviction and the circuit court's order denying the defendant's postconviction motion to withdraw his no-contest plea. It remanded the matter to the circuit court to allow the defendant to withdraw his plea. The court of appeals concluded that the defendant's plea was not knowing, intelligent, and voluntary and that the defendant received ineffective assistance of counsel.
¶ 9. With regard to the first issue, we conclude that the defendant has proved that the no-contest plea was not knowing, intelligent, and voluntary and thus that the matter should be remanded to the circuit court to allow the defendant to withdraw his no-contest plea.
*551 ¶ 10. Although the matter is resolved on the first issue, we also address the second issue. We conclude that the defendant has proved that he received ineffective assistance of trial counsel and thus that the matter should be remanded to the circuit court to allow the defendant to withdraw his no-contest plea.
¶ 11. Accordingly, the decision of the court of appeals is affirmed.
I
¶ 12. For purposes of this review, the following facts and procedural history are not in dispute.
¶ 13. This case arises out of an armed robbery that took place in December 2009 in Menasha, Wisconsin. The victim was sitting in her car in a shopping center parking lot when a man opened the passenger-side door and entered her vehicle. He put a gun up to the victim's arm and told her to begin driving. He also told the victim to hand over her cash, which she did. The man directed the victim to pull the car over near some apartments. He then informed her he would exit the vehicle. He instructed her to count to 30 after he exited and then to drive away.
¶ 14. The victim cooperated with law enforcement to identify the man who robbed her. First, she helped investigators develop a composite sketch of the man. The defendant was on probation at the time of the robbery. His probation agent thought the composite sketch resembled the defendant. However, when the victim was provided with a photo array that included a photo of the defendant, she did not recognize him as the robber.
¶ 15. Several months later, the victim saw a photograph of the defendant while looking through an online sex offender database. This photograph was the *552 same one the victim had viewed in the photo array. The victim contacted the police and said she believed the defendant was the man who robbed her.
¶ 16. The defendant was arrested and charged with two counts: armed robbery in violation of Wis. Stat. § 943.32(2) (2011-12),[2] with a persistent repeater enhancer pursuant to Wis. Stat. § 939.62, and false imprisonment in violation of Wis. Stat. § 940.30, with a repeater enhancer pursuant to Wis. Stat. § 939.62.
¶ 17. Had the defendant been convicted of armed robbery as a persistent repeater, he would have faced a mandatory sentence of life in prison without the possibility of extended supervision.
¶ 18. Had the defendant been convicted of armed robbery and of false imprisonment as a repeater, without the persistent repeater enhancer erroneously attached to the armed robbery charge, he would have faced a maximum sentence of 32 years of confinement and 18 years of extended supervision.
¶ 19. The State offered a plea agreement in which the persistent repeater enhancer was dropped, as was the false imprisonment charge. The defendant agreed to plead to the charge of armed robbery without any penalty enhancer.
¶ 20. The plea colloquy in the present case correctly informed the defendant of the penalty for armed robbery without a penalty enhancer.
¶ 21. Adhering to the plea agreement, the prosecutor recommended a sentence of eight years' initial confinement with an open term of extended supervision. A presentence investigation report (PSI) recom *553 mended a sentence of 10 to 11 years of confinement and five to six years of extended supervision.
¶ 22. The plea agreement permitted the defendant to argue for a more lenient sentence. The defendant's trial counsel urged the circuit court to impose a sentence of five years' initial confinement to run consecutive to a sentence the defendant was then serving. Trial counsel further requested "a lengthy term of extended supervision."
¶ 23. The circuit court sentenced the defendant to a bifurcated sentence of 25 years of initial confinement and 15 years of extended supervision.
¶ 24. Again, the error of law pervading these proceedings was the attachment of the persistent repeater enhancer to the armed robbery charge against the defendant.
¶ 25. From the defendant's initial appearance through sentencing, the court, the prosecuting attorney, and the defendant's trial counsel all advised the defendant that he was subject to the persistent repeater enhancer.
¶ 26. At the defendant's initial appearance, prior to the appointment of defense counsel, the court commissioner twice informed the defendant that the criminal complaint alleged that he is a persistent repeater subject to life imprisonment without the possibility of parole.[3] The court commissioner stated and then restated:
The Court: It is alleged in Count 1 of the criminal Complaint that you've committed the offense of armed robbery. It is alleged that you would be a persistent repeater as that term is defined under the Wisconsin State Statutes, that would therefore subject you, if convicted on the persistent repeater, of life imprisonment without the possibility of parole.
*554 ¶ 27. At the preliminary hearing, the court commissioner again referenced the persistent repeater enhancer, telling the defendant that "there is the persistent repeater enhancer on Count 1 so there is significant incarceration and penalties involved in regards to this case." Neither the prosecuting attorney nor the defendant's trial counsel corrected this mistake of law.
¶ 28. At sentencing, after the persistent repeater enhancer had been dismissed by the State and only the armed robbery charge remained, the circuit court referenced the mandatory life sentence the defendant would have faced if convicted of armed robbery as a persistent repeater.
¶ 29. The prosecutor misinformed the court and the defendant that the defendant was subject to the persistent repeater enhancer.
¶ 30. At the initial appearance, in requesting a $100,000 cash bond, the prosecutor noted that the defendant "qualifies as a persistent repeater. If he gets convicted of Count 1 that's life without parole."
¶ 31. On March 21, 2011, after the preliminary examination, the State filed an information that included the persistent repeater enhancer.
¶ 32. As we explain more fully later, the defendant's trial counsel advised the defendant that he was subject to the persistent repeater enhancer and therefore faced mandatory life imprisonment without extended supervision. Trial counsel based her advice to the defendant about accepting the plea agreement on this mistaken view of the law.
¶ 33. That the persistent repeater enhancer was an error of law, that is, a legal impossibility, did not come to light until after sentencing.
*555 II
¶ 34. We first address whether, under the totality of the circumstances, the defendant has the right as a matter of law to withdraw his no-contest plea on the ground that it was not entered knowingly, intelligently, and voluntarily. The basis for the defendant's challenge to his plea is that when he was deciding whether to accept the State's plea offer or go to trial, the State, the court, and the defendant's trial counsel mistakenly advised the defendant that he was facing a mandatory sentence of life in prison without the possibility of extended supervision.
¶ 35. We agree with the court of appeals that "the fundamental error of law [about the applicability of the persistent repeater enhancer to the defendant] that pervaded the plea negotiations and sentencing" rendered the defendant's plea unknowing, unintelligent, and involuntary.[4]
¶ 36. The applicable standard of review is as follows: To withdraw a guilty plea after sentencing, a defendant must show by clear and convincing evidence that a refusal to allow withdrawal of the plea would result in manifest injustice, that is, that there are "serious questions affecting the fundamental integrity of the plea."[5] The defendant has the burden to establish manifest injustice.[6]
*556 ¶ 37. There are several ways a defendant may demonstrate manifest injustice.[7] One way is to show that the defendant did not enter the plea knowingly, intelligently, and voluntarily.[8] A plea that was "not entered knowingly, voluntarily, and intelligently violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right."[9]
¶ 38. Whether a defendant's plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact.[10] An appellate court upholds the circuit court's findings of historical facts unless they are clearly erroneous.[11] An appellate court independently determines whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary, benefiting from the analyses of the circuit court and court of appeals.[12]
¶ 39. In numerous cases, the court has held that affirmative misinformation about the law provided by the prosecutor and defense counsel can support a *557 holding that withdrawal of a plea of guilty or no contest must be permitted because the plea is uninformed and its voluntariness is compromised.[13] Appellate courts at the state[14] and federal[15] levels have similarly concluded *558 that misinformation given to a defendant about the consequences of conviction may warrant withdrawal of a guilty plea.
¶ 40. In determining whether a similar holding is appropriate here, we review the totality of the circumstances, including the record of the postconviction hearing at which only the defendant and his trial counsel testified.[16]
¶ 41. The defendant testified at the postconviction hearing that, early on, he intended to go to trial because he believed the State's case was weak. The main weakness of the State's case, in the defendant's opinion, was the victim's failure to identify him when provided with a photo array that included his photo. The State acknowledged this weakness of its case.
¶ 42. The prosecuting attorney explained at the sentencing hearing that the State had agreed to recom *559 mend the sentence it did in exchange for the defendant's plea "because there were some underlying factual burdens that were going to be difficult for the State. . . . [I]dentity may have been a problem . . . ."
¶ 43. In addition, the State's reply brief in this court acknowledges that "it can be problematic to show an eye witness a photo of a suspect during a subsequent photo array when the witness has previously seen, and failed to identify, that photo at a previous array."[17]
¶ 44. The defendant testified that, in spite of his initial intention to go to trial, when he considered the possibility of receiving a sentence of life in prison without extended supervision he decided he "couldn't take that chance." The defendant thus entered a no-contest plea because, in his words, "even though there's not a lot of proof, I can't take the chance of not coming out.... I mean life without parole is life without parole . . . it's just too much."
¶ 45. The defendant further testified that the greatest benefit of the plea deal was "getting rid of the persistent repeater." He stated that he entered the plea to "make the life without parole go away so that I could get myself a chance to get out."
¶ 46. The defendant acknowledged that he might not have filed a postconviction motion for plea withdrawal if he had received the sentence the State recommended. He nonetheless insisted that the dropped persistent repeater enhancer was his main reason for accepting the plea offer and that the inapplicability of that enhancer rendered his plea involuntary.
¶ 47. The defendant's trial counsel confirmed the defendant's declarations to a large extent. Trial counsel testified that the defendant had expressed a strong *560 desire for the "opportunity for a life on the outside with his wife"; that prior to receiving the State's plea offer, the defendant never said he did not want to go to trial; and that trial counsel knew the defendant was greatly concerned about the persistent repeater enhancer.
¶ 48. Trial counsel further testified that the State's offer to drop the persistent repeater enhancer was the most significant factor motivating her recommendation that the defendant accept the plea deal. A letter trial counsel sent the defendant after the State made its plea offer corroborates this testimony. The letter was entered into evidence at the postconviction hearing. It states:
If convicted on count one as alleged, you would face life in prison with NO POSSIBILITY of parole or extended supervision.... The State is recommending that you plead to count one, without the persistent repeater. ...
In light of the State's willingness to dismiss the persistent repeater in count one and to dismiss outright the charge of false imprisonment in count two, I believe that it is in your best interest to give serious consideration to the State's offer. You are still able to argue for a lower sentence through me, however you would not face life in prison if convicted.
(Emphasis in original.)
¶ 49. Trial counsel also testified that she would have advised the defendant to enter the plea agreement regardless of the persistent repeater enhancer. Trial counsel considered the State's offer to recommend just eight years' initial confinement a good deal for the defendant.
¶ 50. In the letter quoted above, trial counsel explained that if the defendant chose to go to trial, the State intended to introduce other acts evidence of the *561 defendant's past convictions, which involved multiple counts of armed robbery and sexual assault. Trial counsel advised the defendant that this evidence, along with evidence that the victim identified him as a result of looking at a sex offender database, would be "very devastating" to his case. Trial counsel informed the defendant that the victim made a very credible witness.
¶ 51. Finally, trial counsel testified that, in her view, the defendant agreed to plead no contest based on the totality of the circumstances, not just the dropped penalty enhancer.
¶ 52. The defendant presented a persuasive account (including his testimony, that of defense counsel, and trial counsel's letter to the defendant) of why, absent the misinformation he received about the persistent repeater enhancer, he would not have entered a no-contest plea, why he would have gone to trial, and why the no-contest plea was not knowing, intelligent, and voluntary.
¶ 53. The State points to several parts of the record to support its contention that, regardless of the mistake of law regarding the applicability of the persistent repeater enhancer to the defendant, he would have accepted the State's plea offer. The State argues there were multiple factors at play, including the potential admission of other acts evidence and the apparent credibility of the State's main witness (the victim).
¶ 54. The State emphasizes trial counsel's statement that she believed the defendant accepted the plea offer based on "the totality of the circumstances," which included the potential admission of other acts evidence and the apparent credibility of the State's main witness (the victim). But the State acknowledges that trial counsel also identified the dropped persistent repeater *562 enhancer as "the most significant factor" contributing to the defendant's decision to enter a plea of no contest.
¶ 55. The State also points to trial counsel's statement that she would have advised the defendant to enter a plea regardless of the dropped enhancer. In contrast, the defendant's testimony supports the conclusion that the defendant would not have heeded his counsel's advice to accept the plea agreement if he had known the persistent repeater enhancer was inapplicable.
¶ 56. Finally, the State argues the defendant's motivation for moving to withdraw his plea is evidence the plea was knowing, intelligent, and voluntary. The defendant conceded at the postconviction hearing that had he received the sentence the State recommended, he would not now be challenging his plea.
¶ 57. The circuit court raised this point at the conclusion of the postconviction hearing, announcing as follows: "[T]he only reason we're here on appeal is because I did not go along with those recommendations and I gave him the maximum sentence. . . . [N]ow that he's got the sentence he doesn't like it and now he wants to appeal it and find a way to do so.”
¶ 58. The State asserts that because the defendant admitted that his dissatisfaction with his sentence drove his decision to challenge the plea, his challenge must fail.
¶ 59. The court of appeals was not persuaded by the State's arguments. Neither are we.
¶ 60. First, for a defendant to show that a plea was not knowing, intelligent, and voluntary, the case law does not require that the decision to plead no contest be based exclusively on the misinformation the *563 defendant received.[18] Rather, a guilty or no-contest plea is not voluntary unless the defendant is "fully aware of the direct consequences [of his plea], including the actual value of any commitments made to him by the court, prosecutor, or his own counsel. . . ."[19]
¶ 61. In the instant case, the defendant's no-contest plea was not made with full knowledge of the factors pertinent to a decision regarding whether to plead or proceed to trial. The defendant did not know the actual value of the commitments made to him by the prosecutor in the plea offer.
¶ 62. Second, the defendant repeatedly asserted that eliminating the possibility of receiving a mandatory life sentence was his primary motivation for entering the plea agreement. Trial counsel's testimony supports the defendant's testimony.
¶ 63. Third, the disparity between the sentence the defendant thought he would face if convicted of armed robbery with a persistent repeater enhancer and the maximum sentence he would have faced without *564 the persistent repeater enhancer attached to the armed robbery charge was significant. According to the court of appeals, "[t]he hope that one will live long enough to have a life outside the prison walls is, as the advertisement goes, priceless." Because the defendant "thought he had to bargain for that hope," he pled no contest.
¶ 64. At oral argument, Justice Prosser and the State posited that the State could have amended its complaint to attach a repeater enhancer (as opposed to a persistent repeater enhancer) to the armed robbery charge. Had the State done so, the defendant would have faced an additional six years of confinement, for a total of 38 years of confinement.
¶ 65. The implication of this reasoning is that, for this 51-year-old defendant, there is no significant difference between a maximum sentence of 32 or 38 years in prison and a mandatory sentence of life in prison without the possibility of extended supervision.
¶ 66. This reasoning overlooks the crucial fact that the statutory penalty of 32 or 38 years in prison represents the maximum penalty a circuit court may impose. A circuit court may, in its discretion, impose a lesser term of confinement. In contrast, the persistent repeater enhancer imposes life in prison as a mandatory sentence. The circuit court has no choice but to impose that sentence. The possibility that a circuit court may impose a sentence less than the statutory maximum is important to the defendant in deciding whether to enter a plea.
¶ 67. Fourth, while the sentence imposed by the circuit court may be driving the defendant's pursuit of plea withdrawal, the appropriate inquiry is not into the defendant's motivation for filing the postconviction motion. Rather, the appropriate inquiry is into the defendant's motivation for entering the no-contest plea *565 in the first place. The defendant's subsequent satisfaction or dissatisfaction with his sentence has no bearing on whether his initial decision to enter a plea was knowing, intelligent, and voluntary.
¶ 68. Fifth, if the defendant's trial counsel were ineffective (and we conclude in Part III that she was ineffective), it follows that the defendant's plea was not knowing, intelligent, and voluntary. "[T]he sine qua non to a voluntary plea of guilty is the assistance of counsel 'within the range of competence required of attorneys representing defendants in criminal cases.' "[20]
¶ 69. Considering the totality of the circumstances, we conclude that the defendant entered into the plea agreement without knowing the actual value of the State's plea offer and relying on misinformation from the court, the State, and trial counsel about the applicability of the persistent repeater enhancer. As a result, the defendant was prevented from making a reasoned decision whether to proceed to trial or plead. The misinformation undermined the defendant's capacity to knowingly, intelligently, and voluntarily choose between accepting the State's plea offer and proceeding to trial. Thus, we conclude that the defendant established that he did not knowingly, intelligently, and voluntarily enter the plea of no contest.
¶ 70. A plea that was "not entered knowingly voluntarily and intelligently violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right."[21] The defendant must be permitted to withdraw his no-contest plea.
*566 ¶ 71. Before we turn to the second issue regarding ineffective assistance of counsel, we examine the State's argument that the instant case is governed by State v. Denk, 2008 WI 130, 315 Wis. 2d 5, 758 N.W.2d 775, and that the court of appeals incorrectly applied Denk to the instant case.[22]
¶ 72. We briefly state the facts in the Denk case to compare it to the present case.
¶ 73. Denk was charged with Class I felony possession of methamphetamine, Class H felony possession of drug paraphernalia, misdemeanor possession of marijuana, and misdemeanor possession of drug paraphernalia. Pursuant to a plea agreement, Denk pled no contest to felony possession of methamphetamine. The State dismissed the remaining charges.
¶ 74. Denk subsequently filed a postconviction motion to withdraw his plea, arguing that "there was no factual basis for charging him with one felony count of possession of methamphetamine paraphernalia [the dismissed charge]. . . and thus, the district attorney's *567 offer to drop the charge provided an illusory benefit."[23] Denk's appellate counsel argued that the methamphetamine paraphernalia in Denk's possession "was intended for personal use," while the statute relating to paraphernalia under which he was charged "related to the manufacture of methamphetamine." Thus, Denk argued that the State's dropping the charge provided an illusory benefit. This court did not allow Denk to withdraw his plea.[24]
¶ 75. There is a superficial similarity between Denk and the instant case. The two cases are, however, significantly different. The instant case is not a Denk case. It is a case of first impression.
¶ 76. In short, in Denk the charge that was dismissed pursuant to Denk's plea agreement did not pose a legal or factual impossibility. The Denk court did not decide (and the record did not demonstrate) that there was no factual or legal basis for that charge.
¶ 77. In Denk, there was a factual and legal dispute about what Denk was doing with the methamphetamine paraphernalia, about whether the State could have proved the dismissed charge beyond a reasonable doubt, and about the proper scope of the statute appli *568 cable to the dismissed felony. The Denk court recognized that it was uncertain whether the State would have prevailed on the dismissed charge. At that stage in the proceeding, however, Denk had not demonstrated that the dismissed charge was a factual or legal impossibility. Denk thus benefitted when the felony drug paraphernalia charge was dropped pursuant to the plea agreement.
¶ 78. In contrast, it is undisputed in the present case that the persistent repeater enhancer attached to the armed robbery charge could not, as a matter of law, have been applied to the defendant. The law required the State to drop the persistent repeater enhancer. The State's offer to drop the persistent repeater enhancer as part of the plea agreement provided no benefit to the defendant.
¶ 79. In the present case, the plea offer was significantly less valuable than the defendant believed because the persistent repeater enhancer was a legal impossibility. Dropping the enhancer provided an illusory benefit to the defendant. When entering his plea of no contest, the defendant failed to understand "the actual value" of the plea offer he accepted.
¶ 80. No prior case has addressed the validity of a guilty or no-contest plea entered to avoid a penalty enhancer attached to a felony charge when that penalty enhancer was indisputably a legal impossibility. The instant case presents a question of first impression. We have addressed that question here.
Ill
¶ 81. Although the matter is resolved on the first issue, we turn now to the second issue: Under the totality of the circumstances, did the defendant have *569 the right as a matter of law to withdraw his no-contest plea on the ground that he demonstrated ineffective assistance of counsel? The basis for the defendant's ineffective assistance of counsel claim is that the defendant's trial counsel mistakenly advised the defendant he would face a mandatory sentence of life in prison without the possibility of extended supervision if he did not accept the plea agreement.
¶ 82. We agree with the court of appeals that the defendant's trial counsel was constitutionally ineffective.
¶ 83. The applicable standard of review for this issue is the same as for the first issue: To withdraw a guilty plea after sentencing, a defendant must show by clear and convincing evidence that a refusal to allow withdrawal of the plea would result in manifest in justice, that is, that there are "serious questions affecting the fundamental integrity of the plea... ,"[25] There are several ways the defendant can meet this burden of proof.[26]
¶ 84. One way to demonstrate manifest injustice is to establish that the defendant received ineffective assistance of counsel.[27] Ineffective assistance of counsel claims are rooted in the United States and Wisconsin constitutions. Article I, Section 7 of the Wisconsin *570 Constitution and the Sixth Amendment to the United States Constitution (applied to the states by the Fourteenth Amendment) guarantee criminal defendants the right to effective assistance of counsel.
¶ 85. To show he has been deprived of that right, the defendant must prove (1) that trial counsel's performance was deficient; and (2) that this deficiency prejudiced the defendant. Strickland v. Washington, 466 U.S. 668 (1984).
¶ 86. Whether the defendant received ineffective assistance of counsel is a question of constitutional fact.[28] An appellate court upholds the circuit court's findings of fact unless they are clearly erroneous. "Findings of fact include 'the circumstances of the case and the counsel's conduct and strategy.' "[29] An appellate court independently determines whether those historical facts demonstrate that defense counsel's performance met the constitutional standard for ineffective assistance of counsel, benefiting from the analyses of the circuit court and court of appeals.[30]
¶ 87. We first explore whether trial counsel's performance was deficient.
¶ 88. The test for deficiency of performance is objective: Under the totality of the circumstances, did trial counsel's performance fall "outside the wide range *571 of professionally competent assistance"?[31] "Normally, judicial scrutiny of an attorney's performance will be highly deferential."[32]
¶ 89. The State has not challenged the defendant's contention that trial counsel's performance fell below an objective standard of reasonableness.
¶ 90. A defendant's decision whether to go to trial or plead no contest (or guilty) is generally the most important decision to be made in a criminal case. A defendant should have the benefit of an attorney's advice on this crucial decision [33]
¶ 91. We agree with the court of appeals that the defendant has shown that trial counsel performed deficiently when she failed to ascertain that the persistent repeater enhancer was, as a matter of law, inapplicable to the defendant and when she advised the defendant to enter the plea agreement based in large part on the State's offer to drop that enhancer.
¶ 92. Our decisions in State v. Carter, 2010 WI 40, 324 Wis. 2d 640, 782 N.W.2d 695, and State v. Domke, 2011 WI 95, 337 Wis. 2d 268, 805 N.W.2d 364, are instructive regarding the extent to which counsel is *572 required to know or investigate the relevant law. These cases teach that to meet the constitutional standard for effective assistance, "[cjounsel must either reasonably investigate the law and facts or make a reasonable strategic decision that makes any further investigation unnecessary."[34]
¶ 93. Trial counsel in the present case offered no reason — strategic or otherwise — for failing to know or investigate the persistent repeater enhancer statute or for failing to challenge the persistent repeater enhancer attached to the armed robbery charge. The persistent repeater enhancer statute is not obscure or unsettled law as applied to the facts of the present case. Thus, trial counsel performed deficiently because she did not know or reasonably investigate a clear statute erroneously applied to the defendant and because she offered no explanation for her failure to know or investigate the statute. Furthermore, defense counsel's advice to the defendant about his plea was based on the erroneously applied statute.
¶ 94. We turn to the prejudice prong of the Strickland test for ineffective assistance of counsel.
¶ 95. To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[35]
*573 ¶ 96. Thus, the defendant in the present case must demonstrate that there is a reasonable probability he would not have pled no contest and that he would have gone to trial had he known the persistent repeater enhancer was a legal impossibility.[36]
¶ 97. The State argues that the defendant did not prove that trial counsel's deficient performance was prejudicial. The State characterizes the circuit court's declaration that the defendant would have pled no contest even absent the error of including the penalty enhancer as a finding of fact and a finding about the defendant's credibility.
¶ 98. The circuit court never explicitly or implicitly made a finding that the defendant's testimony was incredible. Rather, the circuit court concluded, as a matter of law, that under the totality of circumstances the defendant failed to show that there was a reasonable probability he would have gone to trial absent counsel's error.
¶ 99. This court determines independently, as a matter of law, whether the facts demonstrate prejudice, that is, whether under the totality of the circumstances there is a reasonable probability the defendant would not have pled no contest and would have gone to trial had he known the persistent repeater enhancer was a legal impossibility. "[I]t is by no means obvious how a court is to determine the probability that a defendant would have gone to trial. It is clear enough that a defendant must make more than a bare allegation that *574 he 'would have pleaded differently and gone to trial'. . . ."[37] The defendant in the present case made more than a bare allegation that he would have pleaded differently and gone to trial.
¶ 100. The defendant does not rely on a conclusory assertion of prejudice. Rather, he presented a persuasive factual account of the special circumstances that support his contention that he would have gone to trial absent the misinformation he received about the persistent repeater enhancer.[38] The defendant detailed why his plea of no contest was a direct consequence of the misinformation he received about the penalty he faced. The defendant's testimony is supported by trial counsel's testimony and the record. The record allows the court to meaningfully address the defendant's claim of prejudice.
¶ 101. The defendant explained that he perceived the State's case as having a weak spot (which the State acknowledged at sentencing and in this court) and that he would have gone to trial absent his overwhelming desire to avoid a mandatory sentence of life in prison. The disparity in penalty between the sentence for armed robbery with the persistent repeater enhancer (mandatory life in prison) and the sentence for armed robbery without such an enhancer (a circuit court discretionary determination of prison for a term of years) was significant to the defendant. He did not want *575 to forever foreclose the opportunity to be released from prison. Under these circumstances the State's dropping the (legally impermissible) persistent repeater enhancer was a substantial inducement to the defendant to accept the plea agreement.
¶ 102. Trial counsel's testimony and written communications with the defendant were consistent with the defendant's account of the defendant's state of mind and the events leading up to the plea agreement.
¶ 103. The record support a determination of prejudice under Strickland. Strickland "does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel"; it requires only "reasonable probability."[39]
¶ 104. Under the totality of the circumstances set forth in the record (and we have detailed the testimony at ¶¶ 41-51), we conclude that the defendant has satisfied the prejudice prong of the Strickland standard. He has established that there was a reasonable *576 probability that he would not have pled no-contest and would instead have gone to trial had he known he did not face a mandatory sentence of life in prison without the possibility of extended supervision.
¶ 105. The recent federal district court decision in Pidgeon v. Smith, No. 13-cv-57-bbc, 2014 WL 4294965 (WD. Wis. 2014), is instructive on the question of prejudice. The issue in Pidgeon, a federal habeas corpus proceeding, was whether Pidgeon was denied effective assistance of counsel and was entitled to a trial.
¶ 106. In Pidgeon, the prosecutor proposed a plea agreement promising the defendant that he would not be prosecuted for a sexual offense in a separate case and that the prosecutor would recommend a sentence of 10 years in prison followed by 10 years of supervision. Pidgeon agreed to plead no contest after being misinformed by his trial counsel of the possibility that, should he decline the plea offer, he might be subject to Wisconsin's persistent repeater enhancer statute mandating life in prison without extended supervision.
¶ 107. After sentencing, Pidgeon learned (as a result of his own research) that his prior conviction and the offense in the separate case did not render him subject to the statutory persistent repeater enhancer. He sought to withdraw his no-contest plea. A hearing was held, and Pidgeon and his trial counsel were the only witnesses. Pidgeon testified that he entered the plea agreement because he believed he was facing a mandatory sentence of life in prison.
¶ 108. The federal district court concluded that Pidgeon's trial counsel's failure to investigate the prior conviction and the applicable law was objectively unreasonable: "[A] reasonably capable lawyer. . . would *577 not tell a client that he faced a mandatory life sentence without undertaking an investigation to determine that the advice was accurate."[40]
¶ 109. The federal district court further concluded that Pidgeon's trial counsel's deficient performance was prejudicial, noting that "[t]he only evidence on point is petitioner's unrebutted testimony: he would have taken his chances at trial" had trial counsel not misinformed him that "he ran a strong risk of getting a life sentence .. . ."[41] The federal court stated that trial counsel "neither adduced any evidence that would tend to call petitioner's testimony into question nor suggested that even if counsel misrepresented the potential sentence petitioner could receive, it was not significantly different from what he could actually have received."[42] Thus, Pidgeon showed a reasonable probability that he would not have pled guilty absent trial counsel's error.
¶ 110. In sum, with regard to the first issue, we conclude that the defendant's no-contest plea was not knowing, intelligent, and voluntary and that the matter should be remanded to the circuit court to allow the defendant to withdraw his no-contest plea.
¶ 111. We also conclude that the defendant received ineffective assistance of trial counsel and that the matter should be remanded to the circuit court to allow the defendant to withdraw his no-contest plea.
¶ 112. Accordingly, the court of appeals' decision remanding the matter to the circuit court to allow the defendant to withdraw his no-contest plea is affirmed.
*578 By the Court. — The decision of the court of appeals is affirmed.

 State v. Dillard, 2013 WI App 108, 350 Wis. 2d 331, 838 N.W.2d 112.

 All references to the Wisconsin Statutes are to the 2011-12 version unless otherwise noted.

 See Wis. Stat. § 757.69 (stating the powers of court commissioners).

 Dillard, 350 Wis. 2d 331, ¶ 21.

 State v. Denk, 2008 WI 130, ¶ 71, 315 Wis. 2d 5, 758 N.W.2d 775.

 State v. Bentley, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996).
In past cases, the court has recited that the clear and convincing evidence standard applies to the defendant's burden *556 of proving manifest injustice, without distinguishing between the various ways that manifest injustice can be proven. We apply the clear and convincing evidence standard in the present case.

 State v. Cain, 2012 WI 68, ¶ 26, 342 Wis. 2d 1, 816 N.W.2d 177.

 State v. Brown, 2006 WI 100, ¶ 18, 293 Wis. 2d 594, 716 N.W.2d 906.

 State v. Cross, 2010 WI 70, ¶ 14, 326 Wis. 2d 492, 786 N.W.2d 64.

 Cross, 326 Wis. 2d 492, ¶ 14; Bentley, 201 Wis. 2d at 311.

 State v. Dawson, 2004 WI App 173, ¶ 7, 276 Wis. 2d 418, 688 N.W.2d 12.

 State v. Hoppe, 2009 WI 14, ¶ 61, 317 Wis. 2d 161, 765 N.W.2d 794.

 See, e.g., State v. Riekkoff, 112 Wis. 2d 119, 332 N.W.2d 744 (1983) (holding that when the defendant pled guilty incorrectly believing he could seek appellate review of an evidentiary order, he misunderstood the effects of his plea and the plea was therefore involuntary); State v. Brown, 2004 WI App 179, 276 Wis. 2d 559, 687 N.W.2d 543 (holding that when the State promised to drop, but did not drop, all charges requiring the defendant to register as a sex offender or subjecting the defendant to Chapter 980 civil confinement, the defendant's plea was involuntary); Dawson, 276 Wis. 2d 418 (holding that the legally unenforceable reopen-and-amend provision of the defendant's plea deal rendered the plea involuntary); State v. Woods, 173 Wis. 2d 129, 496 Wis. 2d 144 (Ct. App. 1992) (holding that a guilty plea entered at least in part based on inaccurate legal information about sentencing was neither knowing nor voluntary).

 See, e.g., Reeves v. State, 564 N.E.2d 550, 553 (Ind. Ct. App. 1991) (trial counsel's recommendation that Reeves "accept the plea agreement to avoid being charged as an habitual offender — when Reeves was not habitual eligible" rendered the plea involuntary); Nash v. State, 429 N.E.2d 666, 672 (Ind. Ct. App. 1981) ("In the instant case, Nash was a 30 year old man facing a possibility of a substantial amount of time being tacked on to his sentence by virtue of the improper habitual offender counts. Even if we accept the proposition that this was not the 'main' motivation for his guilty plea, the uncontradicted testimony leads unerringly to the conclusion that it played a significant part in the plea negotiations and therefore rendered the bargain illusory."); People v. Graves, 523 N.W.2d 876, 878 (Mich. Ct. App. 1994) ("Because there is a legal bar to conviction on the charge that was dismissed pursuant to the plea bargain, and defendant's plea was induced by a promise to forgo that charge, defendant was misinformed concerning the benefit of his plea. Thus, defendant is entitled to withdraw his guilty plea as not having been understanding^ and voluntarily made."); People v. Lawson, 255 N.W.2d 748, 750 (Mich. Ct. App. 1977) *558 ("Since defendant surrendered his right to trial in apparent misapprehension of the value of commitments made to him, he should be allowed to withdraw his plea.").

 See, e.g., Hammond v. United States, 528 F.2d 15, 19 (4th Cir. 1975) ("Where, as here, counsel's alleged advice, corroborated by the information supplied by the court, grossly exaggerated the benefit to be derived from the pleas of guilty, it would follow that the pleas were not voluntary.").

 The hearing on the defendant's postconviction motion was a Machner hearing. See State v. Machner, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (1979). Several cases discuss the allegations required in a postconviction motion seeking plea withdrawal to entitle a defendant to a Machner hearing on the ground that the plea resulted from ineffective assistance of counsel. See, e.g., Bentley, 201 Wis. 2d at 316; State v. Saunders, 196 Wis. 2d 45, 48, 538 N.W.2d 546 (Ct. App. 1995). The defendant's motion in the present case was obviously sufficient under these cases. A Machner hearing took place.

 Reply Brief of Plaintiff-Respondent-Petitioner at 11.

 See, e.g., Woods, 173 Wis. 2d 129 (a guilty plea entered at least in part based on inaccurate legal information about sentencing was neither knowing nor voluntary).

 The United States Supreme Court stated the standard for voluntariness in Brady v. United States, 397 U.S. 742, 755 (1970), as follows:
The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit:
“(A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).' 242 F.2d at page 115."

 Hammond, 528 F.2d at 18 (citing Parker v. North Carolina, 397 U.S. 790, 797-98 (1970)).

 Cross, 326 Wis. 2d 492, ¶ 14.

 The State asserts that the court of appeals incorrectly applied the Cross case to the instant case. Both the State and the defendant agree that Cross is inapplicable to the instant case. We agree.
The defect alleged in Cross was "insubstantial" misinformation about the penalty given to the defendant during the plea colloquy. In contrast, the plea colloquy in the present case correctly informed the defendant of the penalty for armed robbery without a penalty enhancer.
In the present case, unlike in Cross, the defendant's acceptance of the State's proposed plea agreement and the defendant's entry of the plea of no-contest to armed robbery were induced by "significant" misinformation the defendant received prior to the plea colloquy regarding the penalty he would face if he did not accept the State's proposed plea agreement and enter a plea of no contest.

 Denk, 315 Wis. 2d 5, ¶ 23.

 Denk distinguished a line of cases in which (1) "the dispute involved the charge to which the defendant actually pled"; (2) "the consequence for which the defendant had bargained when he entered the plea to the charge was a legal impossibility"; and (3) "the defendant failed to understand the inevitable consequences of his plea to that charge, thus rendering his plea ... involuntary." Denk, 315 Wis. 2d 5, ¶ 75. These three factors were not set out as the sole prerequisites in all cases to proving a plea was entered unknowingly, unintelligently and involuntarily. Rather, Denk outlined these factors to summarize our prior plea cases involving mistakes of law and legally unenforceable promises by the State.

 Denk, 315 Wis. 2d 5, ¶ 71. See also Brown, 293 Wis. 2d 594, ¶ 18; Bentley, 201 Wis. 2d at 311.
In past cases, the court has recited that the clear and convincing evidence standard applies to the defendant's burden of proving manifest injustice, without distinguishing between the various ways that manifest injustice can be proven. We apply the clear and convincing evidence standard in the present case.

 Cain, 342 Wis. 2d 1, ¶ 26.

 Bentley, 201 Wis. 2d at 311.

 State v. Jenkins, 2014 WI 59, ¶ 38, 355 Wis. 2d 180, 848 N.W.2d 786.

 State v. Thiel, 2003 WI 111, ¶ 21, 264 Wis. 2d 571, 665 N.W.2d 305

 Jenkins, 355 Wis. 2d 180, ¶ 38.

 Strickland v. Washington, 466 U.S. 668, 690 (1984); State v. Smith, 207 Wis. 2d 258, 274, 558 N.W.2d 379 (1997).

 Smith, 207 Wis. 2d at 274.

 United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (quoting Boria v. Keane, 99 F.3d 492, 496-97 (2d Cir. 1996) (quoting Anthony G. Amsterdam, Trial Manual 5 for the Defense of Criminal Cases § 201, at 339)). See also Patterson v. LeMaster, 21 P.3d 1032, 1036 (N.M. 2001) (citing Gordon).
See also ABA Standards for Criminal Justice § 14-3.2 (3d ed. 1999) ("To aid the defendant in reaching a decision defense counsel, after appropriate investigation, should advise the defendant of the alternatives available.... Defense counsel should not recommend acceptance of a plea unless appropriate investigation and study of the case has been completed.").

 State v. Domke, 2011 WI 95, ¶ 41, 337 Wis. 2d 268, 805 N.W.2d 364 (citing Carter, 324 Wis. 2d 640, ¶ 23 (quoting Strickland, 466 U.S. at 691: "[Cjounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.")).

 Strickland, 466 U.S. at 694.

 Hill v. Lockhart, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."); Bentley, 201 Wis. 2d at 312.

 United States v. Horne, 987 F.2d 833, 835-36 (D.C. Cir. 1993), cert. denied, 510 U.S. 852 (1993).

 Hill, 474 U.S. at 50 (the defendant should allege that had counsel correctly informed him about the penalty, he would have insisted on going to trial and should further allege special circumstances that might support the conclusion that he placed particular emphasis on the misinformation in deciding whether to plead no contest).

 Magana v. Hofbauer, 263 F.3d 542, 547 (6th Cir. 2001).
See William v. Taylor , 529 U.S. 362, 405-06 (2000), in which the Court explained Strickland as follows:
Take, for example, our decision in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be "diametrically different," "opposite in character or nature," and "mutually opposed" to our clearly established precedent because we held in Strickland that the prisoner need only demonstrate a "reasonable probability that. . . the result of the proceeding would have been different.

 Pidgeon v. Smith, No. 13-cv-57-bbc, 2014 WL 4294965, at *5 (W.D. Wis. 2014).

 Id

 Id