KESSLER, J.
*161 ¶1 Mario Douglas appeals a judgment of conviction, entered upon a guilty plea, of one count of second-degree sexual assault of a child under the age of sixteen. He also appeals from the order denying his postconviction motion to withdraw his guilty plea. Douglas contends that his plea was *467 not knowing, intelligent, and voluntary because he was incorrectly advised about the potential convictions and sentences he faced. Alternatively, Douglas argues that he is entitled to sentence modification. He also contends that a no-contact order prohibiting contact with children under the age of sixteen violates his constitutional rights as a parent because it prohibits contact with his own children while he is incarcerated. We conclude that Douglas is entitled to withdraw his guilty plea because it was entered based on incorrect legal advice and thus was not knowing, intelligent, and voluntary. We therefore reverse the judgment of conviction and the postconviction order and remand this matter to the trial court to allow Douglas to withdraw his guilty plea.[1]
BACKGROUND
¶2 On October 22, 2013, Douglas was charged with one count of second-degree sexual assault of a child under the age of sixteen, and one count of first-degree sexual assault of the same child under the age of sixteen, with the threat or use of force. According to the criminal complaint: on or about July 10, 2013, O.L.G. and Douglas, with whom she was friends, met up at a park. The two eventually went to Douglas's *162 house, where Douglas told O.L.G. that his girlfriend was in the basement and wanted to speak with O.L.G. O.L.G. went into the basement, but Douglas's girlfriend was not there. Douglas pushed O.L.G. onto a bed, where he tried to unbutton her shorts, slapped her multiple times, and squeezed her throat. Douglas ultimately inserted his penis into her vagina.
¶3 At the initial appearance, Douglas's counsel moved to dismiss count two (first-degree), or alternatively, count one (second-degree), on the grounds that there were insufficient facts to support both counts. A court commissioner denied the motion.
¶4 At the final pretrial hearing, the State told the trial court that it offered Douglas a plea deal "allowing Mr. Douglas to enter a plea to Count 1, which is second-degree sexual assault of a child. The State would be recommending an initial term of confinement of six to eight years or recommending incarceration, leaving the length up to the Court's discretion. The State would move to dismiss Count 2, which does, if convicted, contain a mandatory [minimum] sentence of 25 years confinement." The State informed the court that Douglas rejected the offer. The following exchange then ensued between the trial court and the parties:
[Trial Court]: [Trial counsel], you want to make a record on that? You advised your client that he's facing about 100 years in prison?
[Trial counsel]: Yes, Your Honor. We have talked about that.
[Trial Court]: You advised him that he not only is facing, but will serve at least 25 years of initial confinement on Count 2, and if he's convicted on both, the State may very well ask me to stack sentences for *163 those two, and he may be facing 30, 40 years of initial confinement. You explained that to your client?
[Trial counsel]: I did, Your Honor....
[Trial Court]: ... I'm not telling you or, more specifically, your client what to do. If he wants a trial, wonderful. We'll bring in a jury, you both can try it, I'll preside over it. But if your client is concerned about six to eight years of initial confinement, he needs to understand *468 if he loses, the earliest date he possibly walks out of prison is the year 2039.
And if he's convicted on both counts, the State, if they ask, or maybe, I, myself, could easily be persuaded to stack time on top of that as there's two offenses, two separate crimes.
So if he's worried about six to eight years of initial confinement, he should do the math and figure out that 25 or 30 years of initial confinement is a lot more than six.
Has he done that math? Is he capable of that?
[Trial counsel]: He is, Your Honor. We've actually gone over that.
[Trial Court]: Mr. Douglas, do you understand you're facing over 100 years in prison here?
[Douglas]: Yes.
....
[Trial Court]: And you want to take your chances at a trial?
[Douglas]: Yes.
¶5 The State then told the trial court that it was in possession of DNA evidence and an admission by Douglas that he had intercourse with O.L.G. The following exchange ensued:
*164 [The State]: In my view, it's a very strong case on Count 1 [second-degree]. Count 2 [first-degree] that's in some points where we're fighting. I'm willing to dismiss that case.
[Trial Court]: Counsel, you explained all of that to your client? He faces a [hundred] years in prison. The State has DNA. He's admitted to at least one of these crimes, admitted to it. The State has a victim, the victim had immediate disclosure.
[Trial counsel]: I did, Your Honor....
[Trial Court]: Mr. Douglas, do you understand that the victim in this case could not consent given her age? That means your DNA on her body, particularly her vaginal area or leg area, is pretty convincing; secondly, you admitted to this offense, to a police officer you admitted your guilt; thirdly, you're facing a [hundred] years in prison; do you understand that?
[Douglas]: Yes, sir.
[Trial Court]: And despite all that you want to take this case to trial?
[Douglas]: Yes, sir.
¶6 After the pretrial hearing, but prior to the scheduled trial, Douglas entered a plea to count one, second-degree sexual assault of O.L.G., whereby the State agreed to dismiss count two and agreed to leave sentencing to the trial court. Douglas was sentenced to eighteen years of incarceration, bifurcated as twelve years of initial confinement and six years of extended supervision. The court also ordered Douglas not to have contact with children under the age of sixteen.
¶7 Douglas filed a postconviction motion for sentence modification, resentencing, or plea withdrawal on the grounds that the trial court, the State, *165 and Douglas's trial counsel, all incorrectly believed that Douglas could be convicted of both first and second-degree sexual assault of O.L.G. based on the facts alleged in the complaint. Douglas argued that because second-degree sexual assault is a lesser-included offense to first-degree sexual assault, he could not have lawfully been convicted of both offenses but was mistakenly advised by his trial counsel, the State, and the court that he faced a maximum exposure of 100 years if convicted of both. Douglas also requested that the postconviction court modify the no-contact order to allow him contact with his children.
¶8 The postconviction court denied the motion, but agreed with Douglas that he *469 could not have been convicted of both offenses when factually, both charges involved the same incident. However, the court stated that while Douglas could not have been convicted of both offenses, he could have been charged with both, therefore, "[t]he plea agreement put [Douglas] in the same position he would have been at the conclusion of a trial under the best-case scenario and in a far better position than a conviction for the more serious sexual assault charge." The court also denied Douglas's request to modify the no-contact order.
¶9 This appeal follows.
DISCUSSION
Plea Withdrawal
¶10 "When a defendant seeks to withdraw a guilty or no contest plea after sentencing, he or she must prove by clear and convincing evidence that refusing to allow plea withdrawal would result in a *166 'manifest injustice.' " State v. Finley , 2016 WI 63, ¶ 58, 370 Wis. 2d 402, 882 N.W.2d 761 (citation omitted). "One way to show manifest injustice is to show that the plea was not entered knowingly, intelligently, and voluntarily." Id. "This court independently determines as a matter of law whether the [trial] court's findings of historical fact demonstrate that the defendant's plea was knowing, intelligent, and voluntary, while benefiting from the analyses of the [trial] court." Id.
¶11 Douglas argues that his plea to second-degree sexual assault of a child was not knowing, intelligent, or voluntary because he was incorrectly informed that he faced a potential sentence of 100 years if convicted of both first and second-degree sexual assault. Thus, Douglas contends, he was not truly aware of the direct consequences of his plea. We agree.
¶12 It is well-established law "that a defendant 'may be convicted of either the crime charged or an included crime, but not both.' " State v. Reynolds , 206 Wis. 2d 356, 364, 557 N.W.2d 821 (Ct. App. 1996) (citation omitted). Both the State and the postconviction court acknowledge that prior to accepting his plea, Douglas was improperly informed that he could be convicted of both charges and thus potentially face 100 years in prison.
¶13 Under WIS. STAT. § 948.02 (2015-16),[2] second-degree sexual assault of a child is a lesser-included offense of first-degree sexual assault of a child *167 both because it is a less serious type of sexual assault and because it does not require proof of any fact in addition to those which must be proven to establish the greater offense. A conviction under § 948.02(1)(c) carries a potential punishment of up to sixty years imprisonment, including a mandatory minimum of twenty-five years of initial confinement. See WIS. STAT. §§ 939.50(3)(b), 939.616(1r). A conviction under § 948.02(2) carries a potential punishment of up to forty years imprisonment with no mandatory minimum term of initial confinement. See §§ 939.50(3)(c), 939.616(1r). *470 ¶14 The Wisconsin Supreme Court has addressed the question of whether a defendant has the right to withdraw a plea when, prior to deciding whether to accept the plea, the defendant is mistakenly advised about his or her potential punishment. In State v. Dillard , 2014 WI 123, 358 Wis. 2d 543, 859 N.W.2d 44, Myron Dillard was charged with armed robbery, with a persistent repeater enhancer, and false imprisonment with a repeater enhancer. Id. , ¶ 16. If Dillard had been convicted of armed robbery under the persistent repeater statute, he would have faced a mandatory sentence of life in prison without the possibility of extended supervision. Id. , ¶ 6. Although *168 Dillard did not meet the criteria for the persistent repeater penalty enhancer, "[f]rom [his] initial appearance through sentencing, the court, the prosecuting attorney, and [Dillard's] trial counsel all advised [him] that he was subject to the persistent repeater enhancer." Id. , ¶ 25.
¶15 The State offered Dillard a plea agreement in which he would plead guilty to only armed robbery without the penalty enhancer. Id. , ¶ 19. The false imprisonment charge and corresponding penalty enhancer would also be dropped. Id. Dillard pled no-contest. Id. , ¶ 44.
¶16 Postconviction, Dillard moved to withdraw his no-contest plea on the grounds that he was wrongly advised by all parties. Id. , ¶ 1. The motion was denied. Id. This court reversed the postconviction court. Id. The supreme court upheld our decision, concluding that applying the persistent repeater penalty enhancer to Dillard's charges was "a legal impossibility" that "did not come to light until after sentencing." Id. , ¶ 33. The court explained that Dillard was entitled to withdraw his no-contest plea because:
the defendant entered into the plea agreement without knowing the actual value of the State's plea offer and relying on misinformation from the court, the State, and trial counsel about the applicability of the persistent repeater enhancer. As a result, the defendant was prevented from making a reasoned decision whether to proceed to trial or plead. The misinformation undermined the defendant's capacity to knowingly, intelligently, and voluntarily choose between accepting the State's plea offer and proceeding to trial. Thus, we conclude that the defendant established that he did not knowingly, intelligently, and voluntarily enter the plea of no contest.
*169 A plea that was "not entered knowingly, voluntarily, and intelligently violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right." The defendant must be permitted to withdraw his no-contest plea.
Id. , ¶¶ 69-70 (citation and footnote omitted).
¶17 The supreme court also explained the importance of the accuracy of information, prior to a plea, regarding a defendant's potential exposure to a penalty so that the defendant can reasonably evaluate the benefit of the offered bargain:
The law required the State to drop the persistent repeater enhancer. The State's offer to drop the persistent repeater enhancer as part of the plea agreement provided no benefit to the defendant.
... [T]he plea offer was significantly less valuable than the defendant believed because the persistent repeater enhancer was a legal impossibility. Dropping the enhancer provided an illusory benefit to the defendant. When entering his plea of no contest, the defendant *471 failed to understand "the actual value" of the plea offer he accepted.
Id. , ¶¶ 78, 79.
¶18 Like Dillard, Douglas accepted the plea offer without knowing the actual value of the offer because he was misinformed by his counsel, the State, and the court that he faced a potential punishment of 100 years if convicted of both offenses. This misinformation constitutes an error of law because Douglas could not have been convicted of both the greater offense and the lesser-included offense. He was unaware of the direct consequences of his plea and could not make a reasoned decision about whether to proceed *170 to trial or to enter a plea. Thus, we conclude that Douglas is entitled to withdraw his plea.[3]
By the Court. -Judgment and order reversed in part and cause remanded.

Because we conclude that Douglas is entitled to withdraw his guilty plea, we need not address Douglas's arguments regarding sentence modification and modification of the no-contact order.

Wisconsin Stat . § 948.02 provides:
948.02 Sexual assault of a child .
(1) First Degree Sexual Assault .
...
(c) Whoever has sexual intercourse with a person who has not attained the age of 16 years by use or threat of force or violence is guilty of a Class B felony.
...
(2) Second Degree Sexual Assault . Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony.
All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Based on our analysis of State v. Dillard , 2014 WI 123, 358 Wis. 2d 543, 859 N.W.2d 44, we reject the State's contention that the error was harmless.