COURT OF APPEALS
DECISION
DATED AND FILED

July 28, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP209-CR**

Cir. Ct. No. **2014CF418**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT Ii

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JASON J. SCHIFELBINE,

DEFENDANT-APPELLANT.

APPEALS from a judgment and an order of the circuit court for Fond du Lac County: GARY R. SHARPE, Judge. *Affirmed*.

Before Reilly, P.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jason J. Schifelbine appeals from a judgment of conviction, following a jury trial, of one count of physical abuse of a child—intentionally causing great bodily harm. Schifelbine also appeals from the order denying his postconviction motion for relief. Upon review, we affirm.

## BACKGROUND

¶2 On August 18, 2014, Schifelbine was charged with one count of physical abuse of a child—intentionally causing great bodily harm. According to the criminal complaint, police responded to St. Agnes Hospital in response to a child abuse claim after receiving a report that one-year-old T.F. was being prepared for flight for life due to severe brain swelling. T.F. also had several bruises all over his body. The complaint states that T.F. was left in Schifelbine's care when he sustained the injuries. Schifelbine claimed that T.F. fell off a kitchen counter while Schifelbine was reaching for the child's sippy cup. Schifelbine also claimed T.F.'s bruising was the result of a routine toddler fall. The complaint further states that, according to medical examinations, T.F.'s injuries were inconsistent with Schifelbine's account; rather, doctors indicated that the mechanism of T.F.'s movement, along with the bruising, suggested an abusive event.

¶3 The matter proceeded to trial where Schifelbine's theory of defense was that T.F.'s injuries resulted from falls. The State called Dr. Angela Rabbitt, a child abuse pediatrician with Child Advocacy and Protection Services at Children's Hospital of Wisconsin, as its expert witness. Rabbitt testified that she examined T.F. upon his admission to Children's Hospital of Wisconsin, along with his medical records from other hospitals. Rabbitt also testified that she spoke with T.F.'s mother and Schifelbine. Rabbitt testified that T.F.'s bruises, which

appeared in clusters all over his body, were inconsistent with Schifelbine's account of how T.F. was injured. Rabbitt stated that many of T.F.'s bruises appeared to be "fingertip contusions"; in other words, the result of someone grabbing and pinching the child.

¶4    Rabbitt also testified T.F.'s forehead and right cheek were swollen, and that there was bruising to both eyes and the area below his eyes. However, Rabbitt acknowledged that one could not determine when the bruising occurred. Rabbitt further described T.F.'s brain injuries, stating that T.F. had swelling in the right side of his brain, some bleeding inside the brain itself, and some bleeding between the brain and the skull, known as "subdermal bleeding." Although Rabbitt could not testify as to the exact cause of T.F.'s injuries, she testified in detail about the "mechanism" of T.F.'s injuries. Rabbitt stated that T.F. had retinal hemorrhaging in his eyes, which was consistent with "rotational forces to the head," such as a shaking event or the head being slammed into a surface. Rabbitt stated that T.F.'s retinal hemorrhaging was not likely caused by a short impact injury, such as a fall from a kitchen counter. Rather, Rabbitt opined that T.F.'s injuries were "caused by a very specific mechanism of the rotation of the brain causing traction on the blood vessels around the brain."

¶5    Dr. Joseph Scheller, a board certified pediatrician and child neurologist, testified for the defense. Scheller opined that it was "in the realm of possibility" that falling from a counter at a height of three to four feet could have caused T.F.'s brain injuries. Scheller testified that multiple medical possibilities supported Schifelbine's version of events. Scheller testified that that a one-year-old child who falls from just over three feet in height would hit the ground at ten miles per hour—a speed that could cause serious harm. Scheller also noted that according to medical records and interviews with members of T.F.'s family, T.F.

had fallen previously and was not seen by medical personnel. If, unbeknownst to anyone, T.F. had suffered an injury during the earlier fall, that previous impact could have "already primed his brain for a serious complication." Scheller testified that another possible reason for the severity of T.F.'s injuries was that T.F.'s blood tests showed that his blood had "less of a tendency to clot than an average person," which put him at a higher risk than an average child who hit his or her head. As to T.F.'s retinal hemorrhages, Scheller stated that the hemorrhaging could have resulted from "a ten-mile-an-hour rate [fall] from a counter top."

¶6     Ultimately, the jury found Schifelbine guilty as charged. The trial court later imposed a prison sentence consisting of fifteen years' initial confinement and ten years' extended supervision with various conditions.

¶7     Schifelbine filed a postconviction motion for a new trial, arguing that while the term "shaken baby syndrome" was not used during trial, the State's theory that T.F. suffered from rotational injuries was the equivalent of arguing that T.F. suffered from shaken baby syndrome. Schifelbine argued that this theory "relied on the unproven assumptions underlying the theory of this syndrome," and trial counsel was ineffective for failing to dispute the State's theory. Specifically, Schifelbine argued that counsel was ineffective for: (1) failing to "[p]resent evidence to refute the State's assertion that abusive shaking and/or rotational injury caused [T.F.] to suffer subdural bleeding"; (2) failing to "[p]resent evidence to refute the State's assertion that abusive shaking and/or rotational injury caused [T.F.] to suffer retinal hemorrhages"; and (3) failing to "[o]bject to the State's expert's 'medical' diagnosis that [T.F.] was the victim of child abuse."

4

¶8      The trial court held a ***Machner***[1] hearing, where both trial counsel and Dr. Scheller testified.  Trial counsel testified that the theory of defense was that T.F. fell in the manner described by Schifelbine and incurred "a short fall head trauma."  Counsel testified that he researched shaken baby syndrome prior to trial and was aware of the controversies surrounding that condition.  Counsel stated that because no definitive cause of T.F.'s had been established, he chose to pursue a defense that focused on the possibility that T.F. suffered an impact injury, rather than a rotational injury.  Counsel testified that he retained Dr. Scheller to "bring evidence to the jury that the way that [Schifelbine] said that [T.F.] fell off the counter could have caused the injuries that were seen."

¶9      Scheller testified about multiple studies examining shaken baby syndrome, as well as the mechanics of the condition.  He disagreed that T.F.'s brain injury and retinal hemorrhages were caused by a rotational injury because injuries were found only on one side of T.F.'s head.  He asserted, "[I]f the contention is that there was this rotational back and forth shaking type injury, I don't know how that could only affect one half of the head."  Scheller acknowledged, however, that severe head trauma from a fall of approximately four feet was rare.  Scheller also conceded that such a fall would not explain all of T.F.'s bruises and acknowledged that T.F.'s injuries could have occurred from abuse.

¶10      The trial court denied the motion, finding that counsel strategically "brought Dr. Scheller to testify to raise issues of doubt and did not challenge the

---

[1] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

concept of 'shaken baby syndrome' because it was not in the case." This appeal follows.

## DISCUSSION

¶11    On appeal, Schifelbine contends that trial counsel was ineffective for failing to refute the State's assertion that "abusing shaking and/or rotational injury caused T.F. to suffer subdural bleeding and retinal hemorrhages." Schifelbine contends that while the term "shaken baby syndrome" was never used at trial, Rabbitt's contention that this case involved abusive head trauma effectively conveyed to the jury that T.F. was a victim of shaken baby syndrome. Schifelbine contends that counsel failed to argue the controversy surrounding this theory, failed to effectively cross-examine Rabbitt, and failed to introduce evidence that T.F. suffered from an impact injury.

¶12    To establish ineffective assistance of counsel, the defendant must show both that trial counsel's performance was deficient and that the deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To find deficient performance, the defendant must establish that "counsel's representation 'fell below an objective standard of reasonableness' considering all the circumstances." *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citation omitted). Our review of counsel's performance is "highly deferential," and "[c]ounsel enjoys a 'strong presumption' that his [or her] conduct 'falls within the wide range of reasonable professional assistance.'" *Id.* (citation omitted).

¶13    To establish prejudice, "the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.*, ¶37 (citation omitted). We need

not reach both prongs of the ***Strickland*** test if one is dispositive. *See **Strickland***, 466 U.S. at 697. Whether the defendant received ineffective assistance of counsel is a question of constitutional fact: we uphold the trial court's findings of fact unless they are clearly erroneous, but we independently determine whether counsel provided constitutionally ineffective assistance. *See **State v. Dillard***, 2014 WI 123, ¶86, 358 Wis. 2d 543, 859 N.W.2d 44.

¶14 At the ***Machner*** hearing, counsel testified that he researched shaken baby syndrome prior to trial and was aware of the controversies surrounding that theory; however, counsel chose to focus on supporting Schifelbine's version of events rather than poke holes in the State's case (although counsel was able to elicit testimony on cross-examination to the effect that Rabbitt could not say what had caused T.F.'s head injury). Counsel explained that Schifelbine's account of how T.F. was injured was the only evidence as to the cause of T.F.'s injuries and that the State had no other explanation directly supported by evidence. "A strategic trial decision rationally based on the facts and the law will not support a claim of ineffective assistance of counsel." *See **State v. Elm***, 201 Wis. 2d 452, 464-65, 549 N.W.2d 471 (Ct. App. 1996). Schifelbine concedes that counsel's strategy was reasonable to an extent, but essentially complains that the strategy was not successful. However, Schifelbine was not entitled to a perfect defense. Indeed, counsel's performance "need not be perfect, nor even very good, to be constitutionally adequate." ***Carter***, 324 Wis. 2d 640, ¶22. Counsel retained an expert to bolster Schifelbine's credibility by providing numerous medical possibilities supporting Schifelbine's version of events. Counsel's decision to primarily focus on what he could prove, while still pointing out what the State could not prove, was a sound strategic decision given the evidence in this case. Schifelbine cannot establish deficient performance.

¶15 Because Schifelbine cannot establish deficient performance, we need not discuss whether trial counsel's performance was prejudicial to Schifelbine's case. *See* ***State v. Breitzman***, 2017 WI 100, ¶81, 378 Wis. 2d 431, 904 N.W.2d 93 ("Where the petitioner fails to satisfy either prong of the ineffective assistance of counsel analysis we need not consider the other.").

¶16 For the foregoing reasons, we affirm the trial court.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.